UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

JAMES AREN DUCKETT,

                Petitioner,

-vs-                             Case No.  5:07-cv-6-Oc-10GRJ

JAMES R. MCDONOUGH, Secretary, Florida
Department of Corrections, and ATTORNEY
GENERAL, State of Florida,

                Respondents.

_____/

## ORDER

      This case is before the Court for consideration of a Petition for Writ of Habeas Corpus (Doc. 1) brought pursuant to 28 U.S.C. § 2254 by a Florida inmate, James Aren Duckett, who has been sentenced to death.  The Respondent has filed a Response in opposition (Doc. 18 ).[1]

      The issues have been fully briefed and the case is ready for decision.  No evidentiary hearing is necessary because the record is fully developed and the claims of the Petition raise issues of law, not issues of fact.  See Breedlove v.  Moore, 279 F.3d 952, 959 (11th

---

[1]The offenses of conviction and the trial in state court occurred in Marion County, Florida, within this district and this division.

Cir. 2002).[2]  Upon a review of the entire record and the Parties written submissions, the Court finds that all of Duckett's claims lack merit.  The Petition will be denied in its entirety.

## **Facts and Procedural History**

The facts of the case are stated at length in the Florida Supreme Court's opinion denying the Petitioner's direct appeal.  See Duckett v. State, 568 So. 2d 891 (Fla. 1990) ("Duckett I").

> Duckett, a police officer for the City of Mascotte, was the only officer on patrol from 7:00 p.m., May 11, 1987, to 7:00 a.m., May 12, 1987. Between 10:00 and 10:30 p.m. on May 11, Teresa McAbee, an eleven-year-old girl, walked a short distance from her home to a convenience store to purchase a pencil. Teresa left the store with a sixteen-year-old Mexican boy, who was doing laundry next door. The boy testified that they walked over to the convenience store's dumpster and talked for about twenty minutes before Duckett approached them. A clerk at the convenience store testified that Duckett entered the store and asked her the girl's name and age, at which time she advised him that Teresa was between ten and thirteen years old. After indicating that he was going to check on her, Duckett exited the store and walked toward the dumpster, where he located the two children. Duckett testified that he conversed with the children and subsequently, acting in his capacity as a police officer, instructed Teresa to return home. The sixteen-year-old boy testified that, after speaking with Duckett, he went to the laundromat to wait for his uncle, who arrived soon thereafter; that Duckett and Teresa were standing near the patrol car; and that Duckett asked the uncle the nephew's age. Subsequently, Duckett suggested that the uncle talk to his nephew while he spoke to Teresa. According to the uncle and the boy, Duckett placed Teresa in the passenger's side of his patrol car and shut the door before

---

[2]In his supplemental reply brief, Duckett requests an evidentiary hearing and leave to conduct discovery with respect to several of his claims.  As discussed below, Duckett's requests are unfounded and due to be denied.

2

proceeding to the driver's side. The uncle also testified that he never saw Teresa touch the hood of Duckett's car.

At approximately 11:00 p.m., Teresa's mother walked to the convenience store, searching for her daughter. Upon arrival, she was told by the store's clerk that Duckett may have taken her daughter to the police station. The mother then left the store and spent about an hour with her sister driving around Mascotte in search of Teresa. During this time, the mother did not see a police car. She next went to the Mascotte police station and, finding no one there, she drove a short distance to the Groveland police station. There, she told an officer that she wanted to report her daughter as missing. The officer told her that he would contact a Mascotte officer to meet her at the Mascotte police station. Teresa's mother returned to the Mascotte police station and waited for fifteen to twenty minutes before Duckett arrived. After arriving, Duckett told her that he had spoken with Teresa at the store; that she had been in his police car; and that he had directed her to return home. Before returning home, the mother also filed a missing person report with Duckett. Subsequently, Duckett went to the mother's residence to get a picture of her daughter, called the police chief to inform him of the missing person report, and advised the police chief that he had made a flyer and did not need any help in the matter. Duckett then returned to the convenience store with a flyer but told the clerk not to post it since it was not a good picture. Although he told the clerk that he would return with a better one, he never did. Duckett did bring flyers to two other convenience stores. The clerk at one of these stores testified that, while the police usually drove by every forty-five minutes to an hour, Duckett came by at 9:30 p.m. but failed to return until he brought the flyer later that evening. A tape of Duckett's radio calls indicated none between 10:50 p.m. and 12:10 a.m. At 1:15 a.m., Duckett went to the uncle's house to question his nephew about Teresa, and Duckett returned to the mother's home around 3:00 a.m.

Later that morning, a man saw what he believed to be a body in a lake and went to find the police chief, who determined that it was Teresa's body. The lake is less than one mile from the convenience store where Teresa was last seen.

A medical examiner testified that the perpetrator had sexually assaulted the victim while she was alive, strangled her, and then drowned her, causing her death. Prior to this incident, the victim had not engaged in any sexual activity. Blood was found on her underpants but not in or about Duckett's patrol car. Semen was discovered on her jeans.

A technician for the sheriff's department examined the tire tracks at the murder scene and indicated that they were very unusual. While leaving the crime scene, he observed that the tracks of a Mascotte police car appeared to be similar. He stopped his vehicle, examined the tracks, and determined that they were consistent with the tracks at the crime scene. An expert at trial corroborated this evaluation. The tracks were made by Goodyear Eagle mud and snow tires, which are designed for northern driving. While the local tire center had not sold any of those particular tires during its nine years of existence, it had received two sets by mistake and placed them on the two Mascotte police cars.

Evidence revealed that the vehicle which left the impressions had driven through a mudhole. However, no evidence was presented that Duckett cleaned his vehicle, and no debris from the scene was found in or on his vehicle. Evidence was also presented that Duckett was neat and clean later that night, as if he had just come on duty.

Both Duckett's and Teresa's fingerprints were discovered on the hood of Duckett's patrol car. Duckett's prints were commingled with the victim's, whose prints indicated that she had been sitting backwards on the hood and had scooted up the car.

A pubic hair was found in the victim's underpants. While other experts could not reach a conclusion by comparing that hair with Duckett's pubic hair, Michael Malone, an FBI special agent who had been qualified as an expert in hairs and fibers in forty-two states, examined the hair sample, concluding that there was a high degree of probability that the pubic hair found in her underpants was Duckett's pubic hair. Malone also testified that the pubic hair did not match the hairs of the sixteen-year-old boy,

the uncle, or the others who were in contact with the victim that evening.

On June 15, 1987, before his arrest, Duckett gave a statement in which he denied driving his vehicle to the lake that evening. He further stated that the victim had not been on the hood of his patrol car and that he had stopped at the Jiffy store for coffee after the girl went home.

The state presented testimony of three young women who allegedly had sexual encounters with Duckett. Prior to the introduction of this testimony, the trial judge instructed the jury that the testimony was for the limited purpose of showing motive, opportunity, plan, and identification. The first woman, a petite nineteen-year-old, testified that, in either January or February, 1987, she ran into Duckett while she was attempting to find her boyfriend. After indicating that he, too, was searching for her boyfriend, he drove her in his patrol car in search of her boyfriend. While in the car, Duckett placed his hand on her shoulder and attempted to kiss her. After she refused to kiss him, he desisted and she got out of the car. The second woman, a petite eighteen-year-old, stated that, on May 1, 1987, Duckett picked her up while she was walking along the highway. After Duckett drove her to a remote area in an orange grove, he parked the car, placed his hand on her breast, and attempted to kiss her. When she refused to kiss him, he desisted and drove her to where she requested. The third woman, a petite seventeen-year-old, testified that on two occasions, once in February or March, 1987, and again in April or May, 1987, she voluntarily met Duckett at a remote area while he was on patrol and performed oral sex on him.

At trial, Duckett testified that, on the night of the murder, while running stationary radar near the convenience store, he noticed a girl talking to three Mexicans at a laundromat. After he saw the girl and one of the boys walk over to an ice machine, he went into the store to ask the clerk some questions about the girl. He then left the store, asked the children their ages, requested that they walk to his car, and questioned the boy further. At this time, the boy's uncle arrived at the scene with some other men. Subsequently, Duckett placed the girl in his car while he spoke

with the uncle about his nephew. After the boy's uncle left with the other men, Duckett obtained more information from Teresa and told her to go home. He did not see her again after she got out of the car and walked in front of the store.

Duckett also stated that he then returned to the station for a short period of time, went to one of the convenience stores for coffee, and went on patrol. He subsequently responded to a call by a Groveland police officer and returned to the station in Mascotte, where he met the girl's mother. After visiting the uncle's home to ask some questions concerning the girl, he drove to the mother's home to get a picture. He then returned to city hall, called the police chief, and told him he was going to make a poster and contact all the stores.

With regard to Teresa's fingerprints on the hood of his car, he explained that it was possible that she sat on the hood when he was at the convenience store. Duckett denied any involvement with the three women.

Duckett I, 568 So. 2d at 891-94.

Duckett was arrested and charged by indictment on October 27, 1987 with one count of first degree murder. On February 29, 1988, Duckett was charged by information with one count of attempt to commit sexual battery in violation of Fla. Stat. § 794.011(2). The charges were consolidated for trial by stipulation of both parties on April 4, 1988.

The case was tried on April 25, 1988 through May 10, 1988. The jury returned a verdict of guilty on all counts. The penalty phase began, and was completed, on the same day that the jury returned its guilty verdict. At the conclusion of the penalty phase, the jury recommended the death sentence for Duckett by a vote of eight to four.

On June 30, 1988, Judge Jerry T. Lockett imposed a sentence of death with regard to the first degree murder count, and a sentence of life with a 25-year minimum mandatory

on the sexual battery count, to run consecutively.  In rendering the sentence of death, the trial judge found two aggravating factors: (1) that the murder was committed during the commission of or immediately after a sexual battery; and (2) that the murder was especially heinous, atrocious, or cruel.  The trial judge found the existence of one statutory mitigating factor - that Duckett had no significant history of prior criminal activity - and several nonstatutory mitigating factors - Duckett's family background and education - and concluded that the aggravating circumstances outweighed the mitigating circumstances.

The conviction and death sentence were affirmed on direct appeal on November 14, 1990, Duckett I, 568 So. 2d 891, and the Court's mandate was issued on December 17, 1990.[3]  A timely motion for post-conviction relief pursuant to Florida Rule of Criminal Procedure 3.850 was filed on May 1, 1992.  Duckett filed an amended Rule 3.850 motion on November 14, 1994.  Both motions raised a total of fourteen claims and various sub-claims.  The trial court held evidentiary hearings on January 7-8, 1997, October 28-30, 1997, December 17, 1997, October 26-27, 1998, and February 19, 1999, and permitted the parties to file additional post-hearing briefs.  The trial court denied Duckett relief as to all of his claims on August 13, 2001.

Duckett filed a timely appeal to the Florida Supreme Court on May 31, 2002.  On June 5, 2002, Duckett also filed a state petition for a writ of habeas corpus.  During oral

---

[3]It does not appear that Duckett filed a petition for certiorari with respect to this decision.

argument,[4] counsel for both Duckett and the State explained that DNA testing might be possible on certain items of clothing previously introduced into evidence. The Florida Supreme Court took the unique approach of *sua sponte* remanding the case to the trial court to "determine whether clothing exists that can be tested for DNA."

On remand, the trial court determined that only one of the items could potentially produce any relevant evidence - a slide which contained a smear from a 1987 vaginal swab. After determining that the slide would not produce any meaningful results and the sample would be consumed by the testing, Duckett chose not to have the slide tested. The trial court denied Duckett's attempt to have other, non-clothing items tested for DNA, on the grounds that such items were outside the Florida Supreme Court's mandate relinquishing jurisdiction, and because such testing would amount to nothing more than a "fishing expedition." Duckett's motion for compliance with Brady v. Maryland, 373 U.S. 83 (1963) and Kyles v. Whitley, 514 U.S. 419 (1995) was also denied.

The Florida Supreme Court denied Duckett's appeal of the trial court's ruling on his Rule 3.850 motions and the remand proceedings, as well as his state petition for a writ of habeas corpus on October 6, 2005. Duckett v. State, 918 So. 2d 224 (2005) ("Duckett II"). A timely filed motion for rehearing was denied on December 22, 2005, and the United States Supreme Court denied Duckett's petition for writ of certiorari on October 2, 2006. Duckett v. Florida, 549 U.S. 846 (2006).

---

[4]The Florida Supreme Court consolidated both cases for purposes of oral argument.

On January 8, 2007, Duckett filed the instant petition under 28 U.S.C. § 2254 (Doc. 1).[5] The petition is 212 pages in length and presents 16 claims of constitutional violations, many of which contain numerous sub-parts. On June 13, 2007, the State filed its consolidated response to each of Petitioner's claims (Doc. 18). Duckett moved to hold the proceedings in this Court in abeyance on May 5, 2008, in order to pursue a successive Rule 3.851 motion for postconviction relief (Doc. 22). The Court denied Duckett's motion on May 23, 2008 (Doc. 24), and the Parties were permitted to file additional briefs on September 23, 2008 and November 12, 2008 (Docs. 32, 35).

Duckett's petition is therefore ripe for resolution, and the Court will address each of the Petitioner's claims seriatim. Clisby v. Jones, 960 F.2d 925 (11th Cir. 1992).

## Standard of Review

Because Duckett filed his petition after April 24, 1996, this case is governed by 28 U.S.C. § 2254, as amended by the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"). Penry v. Johnson, 532 U.S. 782, 792 (2001); Henderson v. Campbell, 353 F.3d 880, 889-90 (11th Cir. 2003). Pursuant to 28 U.S.C. § 2254(d) and (e), this Court's review of the state court's factual findings must be highly deferential. Such findings are presumed to be correct unless rebutted by clear and convincing evidence. Fugate v. Head, 261 F.3d 1206, 1215 (11th Cir. 2001); § 2254(e)(1). Similarly, the state courts' resolutions of issues of law – including constitutional issues – must be accepted unless

---

[5]It is undisputed that the petition was filed within the one-year limitations period set forth in 28 U.S.C. § 2244(d)(1). See State's Response, p. 17 (Doc. 18).

they are found to be "contrary to" clearly established precedent of the Supreme Court of the United States or involve an "unreasonable application" of such precedent. 28 U.S.C. § 2254(d); Williams v. Taylor, 529 U.S. 362 (2000); Robinson v. Moore, 300 F.3d 1320 (11th Cir. 2002). Indeed, it is not enough that the federal courts believe that the state court was wrong; it must be demonstrated that the state court decision was "objectively unreasonable." Williams, 529 U.S. at 409-10. See also Bell v. Cone, 535 U.S. 685, 694 (2002); Breedlove v. Moore, 279 F.3d 952, 961 (11th Cir. 2002).

Moreover, in order for a court to consider claims brought in a federal habeas petition they must first be fully exhausted in state court. 28 U.S.C. § 2254(b)(1); Kelly v. Sec'y for Dept. Of Corrections, 377 F.3d 1317, 1343 (11th Cir. 2004). In order to be exhausted, a federal claim must be fairly presented to the state courts. Picard v. Connor, 404 U.S. 270, 275 (1971). A federal question raised in a federal habeas petition is not fairly presented to the state courts if the issue is only raised as a state law claim before the state courts. Anderson v. Harless, 459 U.S. 4, 6-8 (1982). Thus, federal claims that have not been fairly presented are procedurally barred and cannot be adjudicated at the habeas stage; and a claim is "fairly presented" to a state court only when a "reasonable reader would understand each claim's particular legal basis and specific factual foundation," Kelley, 377 F.3d at 1344-45 (citing Picard, 404 U.S. at 277, 92 S.Ct. at 513). Similarly, claims that are not presented at all at the state court level, or that the state courts determine to have been either legally insufficient or procedurally barred, are also barred in this Court. See, e.g.,

<u>Sims v. Singeltary</u>, 155 F.3d 1297 (11th Cir. 1998); <u>Bolender v. Singletary</u>, 16 F.3d 1547 (11th Cir. 1994); <u>Lindsey v. Smith</u>, 820 F.2d 1137 (11th Cir. 1987).

### Teague v. Lane Retroactivity Analysis

In addition to performing the analysis required by AEDPA, a federal court considering a habeas petition must also consider whether the petitioner's claims are barred under the non-retroactivity rule set forth in <u>Teague v. Lane</u>, 489 U.S. 288 (1989). <u>See</u> <u>also</u> <u>Horn v. Banks</u>, 536 U.S. 266, 272 (2002); <u>Caspari v. Bohlen</u>, 510 U.S. 383, 389 (1994). "Under <u>Teague</u> a new rule of criminal procedure generally may not be applied in a federal habeas proceeding where the judgment in question became final before the rule was announced." <u>Schwab v. Crosby</u>, 451 F.3d 1308, 1323 (11th Cir. 2006). A state conviction becomes final "when the availability of direct appeal to the state courts has been exhausted and . . . a timely filed petition [for a writ of certiorari] has been finally denied." <u>Caspari v. Bohlen</u>, 510 U.S. 383, 389 (1994). A case announces a new rule "when it breaks new ground or imposes a new obligation on the States or Federal Government," but not if the result in that case is "dictated by precedent existing at the time the defendant's conviction became final." <u>Teague</u>, 489 U.S. at 301. Because Duckett did not file a petition for certiorari, his conviction became final on February 12, 1991, when the 90-day period for filing his petition expired. <u>Beard v. Banks</u>, 542 U.S. 406, 411 (2004). Therefore, the law as it existed as of February 12, 1991 governs Duckett's claims.

The State contends that each of Duckett's claims is barred under <u>Teague</u> because in order to rule in Duckett's favor, the Court would have to create a new rule of law which would then have to be applied in a manner not dictated by controlling precedent at the time Duckett's conviction became final. Duckett, as expected, argues that with the exception of Claim XVI, none of his claims are <u>Teague</u>-barred. Unfortunately, in the more than 370 pages of briefing submitted to this Court, neither side has provided any analysis - other than to expound in excruciating detail on the <u>Teague</u> standard itself - explaining precisely how each claim is or is not barred under <u>Teague</u>. The Court will therefore undertake this task as necessary with respect to each claim.

## Standard for Ineffective Assistance of Counsel

Most, if not all of Duckett's 16 enumerated claims are a combination of alleged errors by the State courts and allegations of deficient performance by trial and appellate counsel. Therefore, the Court will be reviewing Duckett's claims under the well-established two-part test for ineffective assistance of counsel set forth in <u>Strickland v. Washington</u>, 466 U.S. 668, 690 (1984). First, the petitioner must show that his counsel's representation "fell below an objective standard of reasonableness . . . considering all the circumstances." <u>Id</u>. at 688. Counsel's errors must be "so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." <u>Id.</u> at 687. Judicial scrutiny of counsel's performance must be highly deferential, and every effort should be made to evaluate the conduct from counsel's perspective at the time. <u>Id.</u> at 688. The petitioner must also

overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy. Id. See also Devier v. Zant, 3 F.3d 1445, 1450 (11th Cir. 1993) ("a court should be highly deferential to those choices . . . that are arguably dictated by a reasonable trial strategy.").

Once the petitioner demonstrates that counsel's behavior was objectively unreasonable, he must still prove that counsel's particular errors "had an actual effect on the defense," not merely that the errors had "some conceivable effect on the outcome of the proceeding." Strickland, 466 U.S. at 693. Stated differently, the petitioner must show actual prejudice; that there "is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. In determining this prejudice prong, the court must "consider the totality of the evidence before the judge or jury." Id. at 695. In addition, failure to raise non-meritorious issues is not considered ineffective assistance of counsel. Card v. Dugger, 911 F.2d 1494, 1520 (11th Cir. 1990).

The burden of establishing whether counsel was ineffective rests with the Petitioner, and it is a heavy one. As such, "the cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between." Rogers v. Zant, 13 F.3d 384, 386 (11th Cir. 1994).

## Claims for Relief

Duckett asserts that his conviction and death sentence were obtained in violation of his Fifth, Sixth, Eighth, and Fourteenth Amendment rights. He further contends that he is innocent and that his conviction and continued incarceration are a miscarriage of justice.

### CLAIM I

> MR. DUCKETT WAS DENIED AN ADVERSARIAL TESTING WHEN CRITICAL, EXCULPATORY EVIDENCE WAS NOT PRESENTED TO THE JURY DURING THE GUILT PHASE OF MR. DUCKETT'S TRIAL. THE STATE EITHER FAILED TO DISCLOSE EVIDENCE WHICH WAS MATERIAL AND EXCULPATORY IN NATURE AND/OR PRESENTED MISLEADING AND FALSE TESTIMONY AND/OR DEFENSE COUNSEL UNREASONABLY FAILED TO DISCOVER AND PRESENT EXCULPATORY EVIDENCE.

Duckett's first claim for relief is actually six separate claims, many with multiple sub-parts, alleging a failure by the prosecutor to produce potentially exculpatory evidence in violation of Brady v. Maryland, 373 U.S. 83 (1963) and Kyles v. Whitley, 514 U.S. 419 (1995), as well as ineffective assistance of Duckett's trial counsel. The majority of these claims simply seek to retry the case. They were all raised during Duckett's Rule 3.850 proceedings, and were all denied as either procedurally defaulted or on their merits. They are also due to be denied here.

## A. Testimony of Gwen Gurley and Subsequent Recantation

Duckett's first argument is that his due process rights were violated when one of the state's witnesses, Grace Gwendolyn Gurley, gave allegedly false trial testimony, and his

trial counsel failed to properly impeach her testimony. Ms. Gurley, who at the time was seventeen years old, testified that on the night of the murder, she walked to a convenience store with two other girls. Ms. Gurley saw a Mascotte police car and a uniformed police officer outside the store around 10:30 p.m.[6] The officer spoke with Ms. Gurley and several other young persons, including the victim, and told them to all go home as it was past the City of Mascotte's evening curfew. Ms. Gurley did not go home, instead she hid on a path just east of the store until she observed the officer leave the area. At that time, Ms. Gurley only saw one person in the police car - the officer himself.

After the officer left the area, Ms. Gurley walked back over to the store to use the pay phone. From the location of the pay phone, Ms. Gurley observed a Mascotte police car parked next to the dumpster on the other side of the store with its headlights turned off. Ms. Gurley heard the police officer call the victim (who was also still at the store) over to the police car - and she recognized the officer's voice as the same officer who had earlier told her to go home. Ms. Gurley saw the victim walk towards the car. Ms. Gurley then went back to her hiding place so that the officer would not see her, and heard a car door shut. She then saw the police car back up and drive away from the convenience store. As the car turned the corner, Ms. Gurley saw two people in the car - the driver and a

---

[6]Gurley's testimony was presented by videotaped deposition, due to the fact that she was pregnant and less than three weeks away from her due date. Gurley testified under oath, with Duckett present, and was cross-examined by Duckett's trial counsel. (Ex. A-4, pp. 668-670).

smaller passenger. Ms. Gurley then identified Duckett as the police officer she saw on the night of the murder. She did not identify the victim as the passenger.

Ms. Gurley also admitted that she had previously been convicted of three felonies for grand theft, and that at the time she first contacted the sheriff's office with information about the murder, she was incarcerated awaiting a hearing on a probation violation. Ms. Gurley also testified that she did not contact the sheriff's office until the day after Duckett's indictment, when she realized that the victim was the same girl she observed with Duckett the night of the murder. She further testified that she did not receive any favorable treatment, was never promised any favorable treatment, and was never threatened by law enforcement in order to procure her testimony.

On cross-examination, Duckett's trial counsel repeatedly asked Ms. Gurley if she was testifying in order to obtain a more favorable resolution on her probation violation. Trial counsel also extensively questioned Ms. Gurley's recollection of what she observed on the night in question, and attempted to find inconsistencies with her prior statements to the sheriff's office. Ms. Gurley consistently denied receiving any type of deal in exchange for her testimony. She did admit, however, that she had initially lied to the police about the identity of one the girls that had accompanied her to the convenience store and about the fact that the girl had gone home earlier in the night.

Duckett now claims that during two post-trial interviews with his counsel and a private investigator, Ms. Gurley recanted her trial testimony, stating that she was not at the convenience store on the night of the murder, and that she was told by police what to say

at trial. Ms. Gurley also allegedly told the private investigator that she received favorable treatment from the police in exchange for her testimony. Duckett contends that Ms. Gurley's recantation establishes either that the state prosecutor knowingly and deliberately suborned false testimony from Ms. Gurley at trial which deprived Duckett of his due process rights, or that Ms. Gurley's subsequent recantations constitute newly discovered evidence mandating a new trial.

At the conclusion of a lengthy evidentiary hearing, the trial court denied this claim, holding that Ms. Gurley's recantation was inconsistent, incredible, and unreliable, and that even without Ms. Gurley's testimony at trial, Duckett would still have been found guilty (Ex. G-7, pp. 20-23). The Florida Supreme Court, relying solely on state law, affirmed, finding both that Ms. Gurley's alleged recantation was not sufficient to warrant a new trial, and that there was sufficient additional circumstantial evidence so that a new trial would not have produced a different verdict. Duckett II, 918 So. 2d at 232-34.[7]

After a careful review of the record and applicable federal precedent, the Court finds that the Florida Supreme Court's decision was factually accurate and was not contrary to or an unreasonable application of federal law.

Duckett's argument that Ms. Gurley repeatedly and consistently recanted her testimony, and that she was coerced by the state to perjure herself stretches the facts and evidence beyond any logical reading. At the Rule 3.850 evidentiary hearing, testimony was

---

[7]It is clear that Duckett raised both state and federal law in his Rule 3.850 briefs.

presented from various witnesses, including Duckett's trial counsel, establishing that after the conclusion of Duckett's trial, a private investigator affiliated with Duckett's defense met with Ms. Gurley, and at that time, Ms. Gurley recanted her prior testimony. Ms. Gurley repeated her recantation at an August 3, 1989 interview with Duckett's trial counsel and the investigator, and also stated that she had received favorable treatment from law enforcement in exchange for her testimony. However, two agents from the Florida Department of Law Enforcement subsequently interviewed Ms. Gurley, at which time she rescinded her recantation and adhered to her original trial testimony.

Ms. Gurley was also called as a witness at the evidentiary hearing. She refused to answer any questions relating to the night of the murder, instead invoking her Fifth Amendment privilege against self-incrimination. Ms. Gurley did testify, however, that representatives from Duckett's post-conviction counsel visited Ms. Gurley several times at her home and twice at her place of employment. Ms. Gurley stated that these representatives at times verbally harassed and badgered her, and on one occasion she called the State Attorney's Office to inquire about filing a police report over an incident where the representatives yelled at Ms. Gurley and threw some papers at her. Ms. Gurley also testified that although the prosecutor mentioned to her that if she lied, she could be subject to a perjury prosecution, the prosecutor did not threaten, harass, pressure, or coerce Ms. Gurley in any way. The investigators who dealt with Ms. Gurley prior to Duckett's trial also testified that they did not pressure or threaten Ms. Gurley to testify.

Thus, at best, the state courts were faced with conflicting out of court statements by a witness who now refused to testify.

    1.    <u>Claim That Prosecutor Presented False Testimony At Trial</u>

The Florida Supreme Court did not directly address Duckett's claim that the prosecutor knowingly presented false testimony at his trial. Nevertheless, the denial of this claim based on other state law grounds is not contrary to applicable federal precedent. In order to succeed on a claim that a prosecutor knowingly suborned perjury, "the defendant must demonstrate that the prosecutor 'knowingly used perjured testimony, or failed to correct what he subsequently learned was false testimony, and that the falsehood was material.'" <u>United States v. Dickerson</u>, 248 F.3d 1036, 1041 (11th Cir. 2001) (quoting <u>Tompkins v. Moore</u>, 193 F.3d 1327, 1339 (11th Cir. 1999) (internal citations omitted). "It is axiomatic that only the knowing use of false testimony constitutes a due process violation. <u>See</u> <u>United States v. Lopez</u>, 985 F.2d 520, 524 (11th Cir.1993).

Duckett's claim that law enforcement and/or the state prosecutor knowingly coached Ms. Gurley and encouraged her to falsely testify at his trial is based solely on Duckett's own suppositions and accusations, and the inconsistent and unreliable testimony of Ms. Gurley.[8] This is not enough to establish a due process violation. <u>See</u> <u>Boyd v. Allen</u>, 592 F.3d 1274, 1307-08 (11th Cir. 2010). The fact that Ms. Gurley's trial testimony was

---

    [8]Duckett also points to the evidentiary hearing testimony of Vickie Davis - however Ms. Davis never testified that any law enforcement officer told her or Ms. Gurley what to say, or encouraged them to testify falsely. Any other evidence amounted to inadmissible hearsay.

capable of impeachment by prior inconsistent statements or testimony of other witnesses does not amount to a showing of perjury, nor does it demonstrate that the prosecution knowingly presented false testimony to the jury.  United States v. Michael, 17 F.3d 1383, 1385 (11th Cir. 1994).[9]

2.    Newly Discovered Evidence Claim

The Florida Supreme Court did address Duckett's claim that Ms. Gurley's post-trial recantation amounted to newly discovered evidence warranting a new trial, albeit on state law grounds alone.  However, its ruling is not contrary to or an unreasonable application of federal precedent.  The Supreme Court has held that "[c]laims of actual innocence based on newly discovered evidence have never been held to state a ground for federal habeas

_____

[9]Duckett also argues that Florida's perjury statute, which was amended during the time period between Duckett's conviction and the date of the evidentiary hearing, prevented Ms. Gurley from "truthfully" testifying at the evidentiary hearing.  Duckett sought a ruling from the trial court that the statute did not apply to Ms. Gurley, as well as a grant of judicial immunity to Ms. Gurley, but the trial court refused, holding that any such ruling would be nothing more than an advisory opinion and of no effect.  The Court agrees.  The Court also finds that the mere existence of a perjury statute does not equate to a denial of due process, and Duckett's reliance on  Webb v. Texas, 409 U.S. 95, 98 (1972) is of no effect.  In Webb, the issue was not the mere existence of a perjury statute, but the fact that the trial court gratuitously singled out the sole defense witness for a lengthy admonition of the dangers of perjury, implied that he expected the witness to lie, and assured the witness that if he lied he would be prosecuted and probably convicted for perjury.  The evidence in Duckett's case is nowhere near as egregious.  Similarly, the Court rejects Duckett's citation to Holmes v. South Carolina, 547 U.S. 319 (2006), which discusses arbitrary rules of evidence which serve no legitimate purpose.  Florida's perjury statute is a substantive criminal law, which has not been ruled unconstitutional.

Duckett also contends that the prosecutor ignored requests by the trial court to grant Ms. Gurley prosecutorial immunity (Doc. 1, p. 38, n. 32).  The Court has been unable to find any evidence in the record of such a request by the trial court.  If anything, the state prosecutor stayed silent on the question of immunity.

relief absent an independent constitutional violation occurring in the underlying state criminal proceeding." Herrera v. Collins, 506 U.S. 390, 400 (1993); Brownlee v. Haley, 306 F.3d 1043, 1065 (11th Cir. 2002). It is not the Court's role to make an independent determination of a petitioner's guilt or innocence based on evidence that has emerged since trial. Brownlee, 306 F.3d at 1065. "This rule is grounded in the principle that federal habeas courts sit to ensure that individuals are not imprisoned in violation of the Constitution - not to correct errors of fact." Herrera, 506 U.S. at 400.

In this case, it appears that Duckett's underlying constitutional violation is a due process claim focusing on a knowing use of perjured testimony by the prosecution. Giglio v. United States, 405 U.S. 150 (1972); Drake v. Francis, 727 F.2d 990 (11th Cir. 1984). The Court again concludes that there is no evidence to support such a claim. Ms. Gurley refused to testify at the evidentiary hearing, and has given conflicting statements concerning the veracity of her trial testimony. Thus, the Florida Supreme Court was correct to find her post-trial statements unreliable and incredible.

Furthermore, even if Duckett's claim was cognizable for habeas relief, it would still fail for lack of merit. "Recantation testimony is properly viewed with great suspicion. It upsets society's interest in the finality of convictions, is very often unreliable and given for suspect motives, and most often serves merely to impeach cumulative evidence rather than to undermine confidence in the accuracy of the conviction." Dobbert v. Wainwright, 468 U.S. 1231, 1233-34 (1984); accord United States v. Santiago, 837 F.2d 1545, 1550 (11th Cir.1988) (noting that "recantations are viewed with extreme suspicion by the

courts"). In general, a witness' recantation of trial testimony will justify a new trial only where the reviewing judge is satisfied that the recantation is true and that it will likely result a different verdict. <u>See</u> <u>Dobbert</u>, at 1234 (citing <u>Brown v. State</u>, 381 So.2d 690, 692-693 (Fla.1980)). The trial court and the Florida Supreme Court held that Ms. Gurley's alleged recantation was not credible. Such factual findings are given great deference on habeas review, and the Court finds no reason to disagree with these findings. Even if her recantation was credible, it "would probably not produce a different result at a new trial." <u>United States v. Calles</u>, 271 Fed. Appx. 931, 943 (11th Cir. 2008); <u>see</u> <u>also</u> <u>McLaughlin v. Secretary, Dept. of Corrections</u>, No. 8:07-CV-2223-T-30TBM, 2009 WL 3010818 at * 4 (M.D. Fla. Sept. 16, 2009) ("To grant relief on the basis of newly discovered evidence, the evidence must be such that it would probably produce an acquittal.") (citations omitted). Given her repeated assertion of her Fifth Amendment rights against self-incrimination, it is highly probable that Ms. Gurley would simply not testify at all at a new trial. And even without her testimony, there was more than enough circumstantial evidence - including testimony of other witnesses placing the victim in Duckett's police car - to ensure Duckett's conviction.

The portion of Duckett's claim relating to Ms. Gurley's allegedly false testimony shall be denied.

### 3. Ineffective Assistance of Counsel

Duckett also argues that there was a wealth of evidence - including testimony of other witnesses - which could have been used to impeach Ms. Gurley's trial testimony,

and/or show her propensity to lie. Duckett's trial counsel, however, did not present such evidence, ostensibly because he did not do a thorough pre-trial investigation, or because the state withheld evidence.[10]

The Florida Supreme Court denied this claim on the grounds that Duckett failed to show both deficient performance and resulting prejudice. Duckett II, 918 So. 2d at 234. This ruling is not contrary to or an unreasonable application of federal law. As the Florida Supreme Court held, Duckett's trial counsel did, in fact, attempt to impeach Ms. Gurley with her prior inconsistent statements and her prior felony convictions, (including the fact that she only served five and a half months on a two year sentence), and Duckett failed to establish how his trial counsel could reasonably have discovered other impeachment evidence.[11]

The Florida Supreme Court was also correct in its determination that Duckett did not establish any prejudice. As discussed above, even if Ms. Gurley's testimony had been severely impeached or excluded entirely, other evidence in the record provided strong support for Duckett's conviction. Thus, Duckett has not shown that but for his counsel's failure to impeach Ms. Gurley further, Duckett would not have been convicted. See Brower

---

[10]The Court finds that there is absolutely no evidence even suggesting that the prosecutor withheld any such evidence from Duckett's defense team.

[11]The other impeachment evidence related to Ms. Gurley's previous admission to lying in a sexual harassment complaint against another Macotte police officer. The complaint was made to the Lake County Sheriff's Department, a wholly separate entity from the Mascotte Police Department.

v. Secretary for Dept. of Corrections, 137 Fed. Appx. 260, 266 (11th Cir. June 24, 2005).

This portion of Duckett's claim is Denied.[12]

## B.    Claims Concerning State's Forensic Evidence

Duckett next argues that his due process rights were violated when the trial court allowed several categories of forensic evidence at trial.

### 1.    Allegations of Expert Shopping

The first of many arguments concerning the hair analysis expert testimony involves the State's alleged "expert shopping" to find the best expert.   The record reflects that the State's first expert, FDLE Agent Deborah Steger, could not make a match between Duckett's hair and a pubic hair found on the victim's body.  As a result, the State sent hair samples to Lifecodes lab to attempt DNA testing.  Lifecodes could not conduct DNA testing on the samples, and returned them to the prosecutor.  The State then sent the hair samples to the FBI for analysis - a step which Duckett contends had never been taken in any prior investigations in Lake County and was contrary to FBI policy.  FBI Agent Michael Malone eventually tested the hair samples, and concluded that Duckett's hair matched that of the unknown pubic hair.  Agent Malone testified to that effect at Duckett's trial.

_____

[12]Duckett also contends that the Florida Supreme Court violated Kyles v. Whitley, 514 U.S. 419 (1995) when it considered his claims with respect to Ms. Gurley individually and not cumulatively with his other alleged Brady violations (all of which are listed in this claim).  The Court finds that the Florida Supreme Court's actions are not contrary to or an unreasonable application of Kyles or any other Supreme Court precedent.  Whether the issues raised in Claim I are analyzed individually or collectively, they do not warrant habeas relief.

The trial court denied this claim as procedurally barred because it could and should have been raised on direct appeal (Ex. G-7, p. 23). The Florida Supreme Court affirmed on the same grounds. <u>Duckett II</u>, 918 So. 2d at 234. As such, the claim is also barred here absent a showing of cause or prejudice. <u>Massaro v. United States</u>, 538 U.S. 500, 504 (2003); <u>Coleman v. Thompson</u>, 501 U.S. 722, 729 (1991).

In his reply memorandum of law, Duckett claims that his appellate counsel was constitutionally ineffective, and that this deficient performance establishes the cause and prejudice necessary to overcome the procedural bar. <u>See</u> <u>Murray v. Carrier</u>, 477 U.S. 478, 488-89 (1986). The only evidence to support Duckett's theory is the fact that Duckett's appellate counsel (who was also his trial counsel) did not raise this issue on direct appeal, and that his appellate counsel withdrew from the case, but was subsequently reappointed approximately five weeks later.

Duckett has presented no explanation as to how the State's contact with two different hair analysis experts and subsequent use at trial of the expert whose results were favorable to the State's case violates any federal or constitutional law; and, absent such a showing, there is no basis for the claim of ineffective assistance of appellate counsel in failing to make that argument. Moreover, even if Duckett had made that sort of legal argument, it would be defeated by the fact that Duckett's trial counsel called the FDLE hair analyst to provide expert testimony on Duckett's behalf. The FDLE analyst testified that she had also tested the hair samples, did not find sufficient similarities between Duckett's hair and the pubic hair, and therefore was not able to reach the same conclusions as Agent

Malone.  The FDLE analyst also testified as to the State's alleged expert shopping, and Duckett's trial counsel made much of this fact during his closing arguments.  (Ex. A-10, pp. 1919-20).  Thus the evidence of the State's "expert shopping" was before the jury, and the jury was free to determine the credibility of each expert.[13]

In sum, there does not appear to have been any cognizable issue to raise on appeal - *i.e.,* there was no error made at Duckett's trial on this point.  The failure to raise a nonmeritorious issue on appeal, particularly in light of the absence of any supporting legal authority, cannot equate to constitutionally deficient performance or prejudice.  As such, Duckett has not overcome the procedural bar, and this portion of Claim I is Denied.[14]

2.    Chain of Custody of Hair Samples

Duckett next argues that because of the State's "expert shopping" the chain of custody for the hair samples was destroyed, thereby depriving Duckett of due process.  This claim focuses on Lifecodes' (the DNA laboratory that the State contacted after FDLE Agent Steger) misplacement of several of Duckett's own hair samples.  Apparently two years after Duckett's trial, Lifecodes transmitted a package to the Lake County Sheriff's Office with additional samples of Duckett's hair which Lifecodes had previously stated were

---

[13]Interestingly, Duckett himself retained a hair expert, Dr. Peter DeForest, but did not call him at trial.  Under Duckett's interpretation of the facts in this case, it would seem that he also engaged in "expert shopping."

[14]In his reply memorandum, Duckett also mentions the need for additional discovery and/or an evidentiary hearing as to several of his claims.  It does not appear that he is seeking such relief as to the witness shopping claim, but if he is, such a request would be denied, as this claim has no substantive merit.

consumed during attempted DNA testing. In actuality, the hair samples had been misplaced in Lifecodes' evidence room. There is no allegation, and no evidence, that Lifecodes or anyone else misplaced the hair found on the victim's body - the "unknown" hair sample.

Duckett argues that because Lifecodes misplaced some of Duckett's hair samples - the "known" hair samples - the entire chain of custody over both the "known" and "unknown" hair samples was destroyed and therefore all hair analysis evidence was unreliable and inadmissible. Duckett raised this claim in his Rule 3.850 proceedings, but it does not appear that the trial court or the Florida Supreme Court specifically addressed it. Instead the state courts denied Duckett's claims concerning the hair analysis expert testimony on other grounds. See 918 So. 2d at 234-35.

Regardless, the Court finds that this portion of Duckett's claim is without merit and the Florida Supreme Court's rejection of Duckett's hair analysis claim on other grounds was not contrary to or an unreasonable application of federal law. Duckett simply has not shown how a laboratory's misplacement of Duckett's own hair samples in any way rendered the hair analysis evidence unreliable and/or inadmissible. There is no evidence that the hair sample taken from the victim's body (the key evidence needed for the hair analysis) was lost, misplaced, or compromised in any way. Duckett's supposition on this point does not equate to a constitutional violation warranting habeas relief.[15]

---

[15]Duckett's request for discovery on this portion of his claim is denied. It does not appear
(continued...)

3. <u>Evidence of a Second Unknown Hair That Did Not Match Duckett</u>

Duckett next contends that evidence of a second unknown hair found on the victim which was not consistent with either the victim's hair or Duckett's hair was never introduced at trial, and that this potentially exculpatory evidence was crucial for Duckett's defense. The trial court and the Florida Supreme Court denied this claim, holding that Duckett did not satisfy the requirements for establishing a claim under <u>Brady</u>. <u>Duckett II</u>, 918 So. 2d at 234-35. The Florida Supreme Court found this claim to be conclusory and insufficiently pled because it failed to identify the alleged hair as <u>Brady</u> material and failed to argue the effect the evidence would have had at trial. 918 So. 2d at 235.

The Court agrees with the Florida Supreme Court. Duckett did not establish a <u>Brady</u> violation in his Rule 3.850 proceedings, and his habeas claim is similarly deficient. In four conclusory sentences, Duckett claims that there is a second unknown hair which was not consistent with Duckett's hair, and that this "potentially exculpatory evidence" was never submitted to the jury. Duckett does not even suggest how the Florida Supreme Court's decision that his claim was insufficiently pled was contrary to or an unreasonable application of applicable federal precedent. <u>See</u> <u>Strickler v. Greene</u>, 527 U.S. 263, 281-82 (1999); <u>Gore v. Crosby</u>, No. 3:03-cv-474-J-25, 2006 WL 4847609 at * 21-22 (M.D. Fla. Jan. 31, 2006). This portion of Duckett's claim is therefore Denied.

---

[15](...continued)
that Duckett requested discovery on this issue during the state court proceedings, and he was granted a full evidentiary hearing. Duckett's current request amounts to a fishing expedition for a claim that has no substantive merit.

4.    Credibility of Hair Analyst Michael Malone

The next portion of Duckett's claim focuses on FBI Agent Michael Malone.  Duckett

contends that Agent Malone was not a credible witness and therefore should not have

been permitted to testify.  The Florida Supreme Court addressed Agent Malone's credibility

both at Duckett's direct appeal and his Rule 3.850 appeal.  In both instances, the Florida

Supreme Court found Duckett's challenges meritless:

> Duckett also claims that the State's witness FBI expert Michael Malone, was
> not credible.  The circuit court concluded that "[t]he attack upon Agent Malone
> of the FBI is unfounded and without merit."  This conclusion is supported by
> the record.  At the evidentiary hearing it was established that Malone had
> received proficiency tests in the examination of hair and fiber and had never
> failed.  Furthermore, Malone had previously testified as an expert in the field
> of hair and fiber, and no court has refused to recognize him as an expert.  On
> direct appeal, we discussed Malone's credibility: "Duckett's counsel
> extensively challenged Malone's credibility during cross-examination of
> Malone and during the testimony of a Florida Department of Law Enforcement
> expert on hair analysis.  It is not our responsibility to reweigh that evidence.
> The expert's credibility was resolved by the jury."  Duckett, 568 So. 2d at 895.

Duckett II, 918 So. 2d at 234.

This decisions is not contrary to or an unreasonable application of federal law.

Duckett also has failed to submit clear and convincing evidence rebutting the Florida

Supreme Court's factual findings.  See Fugate, 261 F.3d at 1215.

Duckett also argues that any evidence concerning Malone's credibility should have

been disclosed by the prosecutor.  There is one problem with Duckett's claim - none of the

evidence existed at the time of Duckett's trial or his appeal.[16]  And, as discussed in more

detail in Claim XIV below, it defies logic as to how the State could have willfully or

inadvertently suppressed evidence concerning Malone's credibility as an expert witness

when such evidence did not yet exist.[17]  While Duckett has cited to state law for the

proposition that Brady applies to post-conviction proceedings, he has not submitted any

federal or Supreme Court authority for such a proposition.[18]  Moreover, none of this

evidence which attacks Malone's credibility establishes in any way that Malone gave false

or unreliable testimony in Duckett's case.

   5.   Misleading Nature of Malone's Testimony

   Duckett next argues that Malone's trial testimony concerning how many different

individual hairs he examined during his career, how he reached his conclusion comparing

Duckett's hair with the unknown pubic hair, as well as the fact that he has only had two

---

[16]Duckett focuses in large part on an April 1997 report from the Department of Justice concerning Malone's testimony in an 1985 hearing relating to former United States District Judge Alcee Hastings.

[17]Duckett's request for discovery on this portion of his claim is also denied.  Duckett claims that he has repeatedly requested evidence from state agencies regarding any letter or directive from the Department of Justice or any other agency to the State in this case concerning possible problems with Malone's testing techniques or testimony in this case.  Duckett has also requested disclosure of any information concerning Malone's veracity as a witness in other cases and/or problems concerning his testing techniques in other cases.  Duckett claims that the prosecutor has failed to provide such evidence.  However, Duckett has made no argument to establish that such evidence even exists in this case, and by all accounts, to the extent such evidence exists in other cases, it did not exist until years after the conclusion of Duckett's trial and appeal.

[18]This is to be expected; the United States Supreme Court recently made clear that Brady does not apply to post-conviction proceedings.  District Attorney's Office for the Third Judicial District v. Osborne, ___ U.S. ___, 129 S.Ct. 2308, 2319-20 (2009).

cases in which he could not distinguish between hairs from different people was highly suspect and misleading. This claim is simply a recast of Duckett's challenge to Malone's credibility. And, as the Florida Supreme Court correctly stated, trial counsel extensively challenged Malone's testimony on cross-examination, and placed the FDLE Agent on the stand to rebut Malone's findings. Malone's credibility as an expert witness and the veracity of his testimony was resolved by the jury. There are no grounds for habeas relief.

6. <u>General Unreliability of Hair Evidence</u>

Duckett next claims that hair evidence is unreliable in general, and is not sufficient to sustain his conviction. Duckett also argues that his trial counsel was ineffective because he should have moved to exclude the hair evidence pretrial. The Florida Supreme Court denied this portion of Duckett's claim as procedurally barred because it could have been raised on direct appeal. <u>Duckett II</u>, 918 So. 2d at 234, n. 12. Duckett concedes that his counsel did not raise this issue on appeal, but argues that this failure constitutes itself ineffective assistance sufficient to overcome the procedural bar.

Because this claim was procedurally barred in the state courts, it is also barred on habeas review. <u>Massaro</u>, 538 U.S. at 504; <u>Coleman</u>, 501 U.S. at 729. Moreover, the Court finds that unlike the cases cited by Duckett in his petition, his conviction did not rely solely on hair comparison evidence. Rather, there was ample other evidence sufficient to support his conviction. Accordingly, counsel's failure to raise this issue on appeal, or to object to the introduction of such evidence at trial did not cause Duckett any prejudice, and therefore cannot equate to constitutionally ineffective assistance. Duckett also has not cited to any

Supreme Court or other federal authority holding that hair comparison evidence in general is inadmissible and/or violates a defendant's due process rights. This portion of Duckett's claim is Denied.[19]

7.    Challenges to Florida Supreme Court's Analysis of the Hair Evidence

Duckett's last portion of his challenge to the hair evidence is directed at the Florida Supreme Court itself. Duckett claims that the Florida Supreme Court did not in fact discuss Agent Malone's credibility, and did not address the argument that Malone himself was a state agent and therefore had the obligation to disclose his own allegedly false testimony in other trials. It is enough, however, that Duckett's claims were rejected; Duckett's burden here is to demonstrate not merely that the Florida Supreme Court was wrong in some particular, but that its decision was contrary to or an unreasonable application of federal precedent. He has not done so.

Duckett's claims pertaining to the hair evidence and related expert testimony are Denied.[20]

8.    Tire Tracks Evidence

_____

[19]The Court further notes that all of the state court decisions cited in this portion of his petition dealt with scenarios where there was no other competent evidence to support a conviction - *i.e.*, the defendant's conviction hinged on the hair comparison testimony alone. See Long v. State, 689 SO. 2d 1055, 1058 (Fla. 1997); Cox v. State, 555 So. 2d 352, 353 (Fla. 1990); Scott v. State, 581 So. 2d 887, 893 (Fla. 1991); Horstman v. State, 530 So. 2d 368, 370 (Fla. 2d DCA 1988); Jackson v. State, 511 So. 2d 1047, 1049-50 (Fla. 2d DCA 1987).

[20]Even though Duckett separated out each of his challenges, it is clear that he has thrown at the Court the proverbial "kitchen sink" in an attempt to exclude the hair evidence and expert testimony. Even if the Court were to combine all seven attacks into one omnibus claim, Duckett still would not be entitled to habeas relief.

Duckett next claims that his trial counsel was ineffective for failing to investigate the origin of the tire tracks at the crime scene, failing to present a forensic expert, and failing to impeach the State's expert about the tire tracks. The Florida Supreme Court denied this claim on the grounds that "Duckett's conclusory arguments on this issue are legally insufficient and fail to present a proper basis for relief." 918 So. 2d at 235.

The Florida Supreme Court's denial of this claim because it was insufficiently pled is a procedural rule which provides an independent and adequate state ground for denial. Therefore, this Court is barred from habeas review of this claim unless Duckett shows cause and prejudice to overcome this procedural bar. See Doorbal v. Dept. of Corrections, 572 F. 3d 1222, 1228 (11th Cir. 2009) (discussing Florida's well-established procedural rule that vague and conclusory allegations on appeal are insufficient to warrant relief). Duckett has failed to allege cause and prejudice that would excuse the procedural bar to this claim, and he is therefore barred from raising it now. See Doorbal, 572 F.3d at 1229; Atwater v. Crosby, 451 F.3d 799, 810 (11th Cir. 2006).

Duckett also does not explain how the Florida Supreme Court's ruling is contrary to or an unreasonable application of Supreme Court precedent. Indeed, Duckett does not cite to any federal authority whatsoever. As such, he has not demonstrated any entitlement to habeas relief on this portion of his claim.

9.    Fingerprints Evidence

Duckett next contends that his trial counsel was constitutionally ineffective because he failed to present a rebuttal expert to counteract the State's fingerprint expert. Duckett

further alleges that his trial counsel failed to introduce evidence that the hood of Duckett's squad car would heat up in a very short period of time so that a person could not lean on the hood for any period of time without getting burned. The Florida Supreme Court denied this claim on the merits.

> Regarding the fingerprints, Duckett presents a conclusory claim that trial counsel was ineffective for failing to present an expert to rebut the State's fingerprint evidence at trial. This claim is legally insufficient. Furthermore, at the evidentiary hearing it was established that defense counsel obtained a fingerprint expert in preparation for trial and did not present an additional expert at trial because, in trial counsel's words, "the report I got [from the expert] was not significantly helpful, as a matter of fact, not helpful at all to the Defense." Trial counsel considered the possibility of presenting a rebuttal expert but made a strategic decision not to call the expert. <u>See</u>, <u>e.g.</u>, <u>Rutherford v. State</u>, 727 So. 2d 216, 223 (Fla. 1998) ("Strategic decisions do not constitute ineffective assistance if alternative courses of action have been considered and rejected.").

918 So. 2d at 235.

The Florida Supreme Court's ruling was not contrary to or an unreasonable application of federal precedent. To the contrary, the Florida Supreme Court's holding tracks applicable federal authority on ineffective assistance of counsel. <u>See</u> <u>Waters v. Thomas</u>, 46 F.3d 1506, 1512 (11th Cir. 1995) ("Which witnesses, if any, to call, and when to call them, is the epitome of a strategic decision, and it is one that we will seldom, if ever, second guess."); <u>Solomon v. Kemp</u>, 735 F.2d 395, 404 (11th Cir. 1984) ("While attorneys

may disagree as to how many or what particular witnesses to call, such is the stuff out of which trials are made.").   Accordingly, this portion of Duckett's claim is Denied.[21]

> 10.   <u>The Pencil</u>

Duckett also contends that his trial counsel was ineffective because he did not present any evidence concerning how a pencil at the crime scene was actually discovered. Duckett further argues that his counsel should have retained an expert to testify as to whether the pencil had been left outside at the crime scene on the night of the murder, or at some later date.  The Florida Supreme Court denied this claim.

> Finally, regarding a pencil found at the crime scene, Duckett claims that trial counsel should have presented the circumstances surrounding its discovery, as well as expert testimony disputing the fact that the pencil had remained outside for ten days. N 13.  This claim is legally insufficient because it fails to address the prejudice prong of <u>Strickland</u>.  Duckett's vague assertion that he was "denied an adversarial testing" is insufficient to present a valid claim for relief.

> N.13 Duckett alleges that after ten days of exposure the pencil should have been in a more deteriorated state.

918 So. 2d at 235.

---

[21]Duckett's reliance on alleged testimony concerning the temperature of the hood of Duckett's car is also without merit.  The Court assumes that Duckett believes this "evidence" would show that the victim was not raped on the hood of Duckett's car because there was no testimony of any burn marks on any part of her body.  However, the evidence as presented by Duckett is simply that the car hood gets hot quickly.  There is no evidence as to how quickly the hood cools down, or whether touching the hood when hot would result in lasting burn marks.  Thus, this alleged testimony, by itself, does not exculpate or aid Duckett and its absence from the trial was not prejudicial.

A review of Duckett's motion papers during his Rule 3.850 proceedings demonstrates that he did not, in fact, ever address the prejudice element of <u>Strickland</u>. <u>See</u> Exh. G-6, pp. 40-42. He also did not address it in his appellate briefs. <u>See</u> Exh. J, pp. 57-59. Therefore, Duckett did not fully and fairly present his claim to the state court, and such claims, including claims which the state courts determine are legally insufficient, are barred in this Court. 28 U.S.C. § 2254(b)(1); <u>Kelly v. Sec'y for Dept. Of Corrections</u>, 377 F.3d 1317, 1343 (11th Cir. 2004); <u>Sims v. Singeltary</u>, 155 F.3d 1297 (11th Cir. 1998); <u>Bolender v. Singletary</u>, 16 F.3d 1547 (11th Cir. 1994); <u>Lindsey v. Smith</u>, 820 F.2d 1137 (11th Cir. 1987). Duckett's lone sentence tagged onto the end of his habeas petition which states, in conclusory fashion, that the result of Duckett's trial would have been different, does not change this result.

This portion of Duckett's claim is Denied.

## C.    Admission of <u>Williams</u> Rule Testimony[22]

During the guilt/innocence phase of his trial, three young women testified for the State to establish that Duckett had a tendency to pick up young, petite women and make passes at them while he was in his patrol car at night, on duty, and in his uniform. The

---

[22]The <u>Williams</u> rule comes from <u>Williams v. State</u>, 110 So. 2d 654 (Fla. 1959), and is codified in Fla. Stat. § 90.404(2)(a):

> Similar fact evidence of other crimes, wrongs, or acts is admissible when relevant to prove a material fact in issue, including, but not limited to, proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, but it is inadmissible when the evidence is relevant solely to prove bad character or propensity.

three incidents took place within six months of the victim's death.  Duckett challenged the admissibility of this evidence during his direct appeal, which the Florida Supreme Court denied.  <u>Duckett I</u>, 568 So. 2d at 895.

Duckett also raised this issue in his Rule 3.850 proceedings, under the guise of an ineffective assistance of counsel claim.   Specifically, Duckett contended that his trial counsel was constitutionally ineffective when he: (1) stipulated to the consolidation of Duckett's charges of sexual battery and first degree murder (thereby allowing the <u>Williams</u> rule testimony to come in at trial as evidence for the sexual battery charge); and (2) failed to present evidence to impeach one of the young women - Linda Upshaw.  Duckett reasserts his ineffective assistance of counsel claim verbatim here.

The Florida Supreme Court rejected this claim, but only addressed Duckett's consolidation argument.

> In claim 1(f), Duckett argues that trial counsel was ineffective for stipulating to consolidating the charges of sexual battery and first-degree murder because it paved the way for admission of the <u>Williams</u> rule testimony.  We conclude that trial counsel was not ineffective for stipulating to consolidation. Charges arising out of the same occurrence such as those brought against Duckett are routinely consolidated.  <u>See</u> Fla. R. Crim. P. 3.150(a) ("Two or more offenses that are triable in the same court may be charged in the same indictment or information in a separate count for each offense, where the offenses.  .  . are based on the same act or transaction or on 2 or more connected acts or transactions."); <u>Mendyk v. State</u>, 545 So. 2d 846, 849 (Fla. 1989) (approving consolidation of first-degree murder, kidnapping, and sexual battery charges because the crimes were committed in a continuous episode on a single victim); <u>Clark v. State</u>, 379 So. 2d 97, 103 (Fla. 1979) (approving consolidation of charges of murder, extortion, and kidnapping); <u>Wright v. State</u>, 739 So. 2d 130, 1233 (Fla. 1st DCA 1999) (approving consolidation of charges of sexual battery and engaging in sexual activity with a person sixteen or seventeen years old where the "related offenses arose from and

were based on the same act or transaction, which occurred in one location within a short period of time"). The sexual battery and murder of the victim in this case were committed by the same person on a single victim in a single episode. An objection would have been futile.

918 So. 2d at 235-36.

The Florida Supreme Court's decision on the consolidation argument is not contrary to or an unreasonable application of applicable federal precedent. Trial counsel is not required to make meritless or futile objections. See United States v. Winfield, 960 F.2d 970, 974 (11th Cir. 1992); Card v. Dugger, 911 F.2d 1494, 1520 (11th Cir. 1990); Lancaster v. Newsome, 880 F.2d 362, 375 (11th Cir. 1989).

The Florida Supreme Court's failure to address the impeachment portion of this claim also does not warrant habeas relief. The impeachment evidence Duckett contends should have been introduced at trial relates to only one of the three witnesses - Linda Upshaw. The other two witnesses' testimony remains unimpeached, admissible similar fact evidence of other crimes, wrongs or acts admissible under Williams v. State.[23] Moreover, the evidence Duckett points to is not exculpatory or directly impeaching. Duckett claims that a witness, Peggy Locke, would have testified that Ms. Upshaw was drunk on the night Ms. Upshaw contends she had her altercation with Duckett, and that Duckett appeared to be nothing more than a concerned police officer attempting to assist Ms. Upshaw. What Ms. Locke could not testify to, however, was what transpired between Ms. Upshaw and

---

[23]The Court recognizes that in its ruling on Duckett's direct appeal, the Florida Supreme Court stated that evidence of the third sexual encounter should not have been admitted under Williams, but that its admission was harmless error. Duckett I, 568 So. 2d at 895. Duckett has not raised this issue in his habeas petition, and therefore the Court will not consider it.

Duckett, because those events took place before Ms. Locke appeared on the scene.  In addition, there is no merit to  Duckett's claim of deficient performance due to his counsel's failure to use Duckett's  employment timesheets to prove that he was not working on the night Ms. Upshaw claims she was with Duckett.  His trial counsel impeached Ms. Upshaw on this point through the testimony of several witnesses.  The timesheet would have been merely cumulative and added nothing further to the trial.  See Adams v. Balkcom, 688 F.2d 734, 742-43 (11th Cir. 1982)

Therefore, the likelihood that the result of Duckett's trial would have changed if Ms. Upshaw had been impeached is negligible at best.   Accordingly, Duckett has not established the prejudice prong of Strickland, and he is not entitled to habeas relief on this portion of his claim.[24]

## D.    Absence of Evidence Concerning Other Potential Suspects

Duckett next contends that the State violated Brady v. Maryland when it did not turn over unspecified evidence concerning potential other suspects, and that his trial counsel was constitutionally ineffective for failing to investigate other suspects.   The Florida Supreme Court denied this claim as legally insufficient.  918 So. 2d at 231.

The Florida Supreme Court's holding is entitled to deference and is not contrary to or an unreasonable application of federal precedent.  With respect to Duckett's Brady

---

[24]The trial court denied Duckett's request for an evidentiary hearing on this portion of his claim, finding that the question of the admissibility of these witnesses' testimony had already been litigated and resolved on direct appeal.  The Court agrees, and therefore Duckett's renewed request for an evidentiary hearing is likewise denied.

claim, he has not identified any evidence that the State withheld concerning other potential

suspects, or that the State ever conducted any investigation into other suspects.  Thus,

without establishing that the State ever possessed such evidence, there was nothing for

the State to turn over, and Duckett's Brady claim fails.  See Stickler v. Greene, 527 U.S.

263, 281-82 (1999).  Instead, it appears that Duckett is asking for an accounting of the

State's investigation in this case, from start to finish.  The Supreme Court has rejected such

a proposition.  See United States v. Bagley, 473 U.S. 667, 675 (1985) ("[T]he prosecutor

is not required to deliver his entire file to defense counsel, but only to disclose evidence

favorable to the accused that, if suppressed, would deprive the defendant of a fair trial.");

United States v. Luis-Gonzalez, 719 F.2d 1539, 1548 (11th Cir. 1983) (The prosecution

does not have an obligation to seek evidence of which it has no knowledge or which is not

in its possession).  Moreover, assuming that Duckett's trial counsel could have discovered

this evidence through his own investigation, there would be no Brady violation.  See

Maharaj v. Sec'y of the Dep't of Corr., 432 F.3d 1292, 1315 n. 4 (11th Cir. 2005); United

States v. Meros, 866 F.2d 1304, 1308 (11th Cir. 1989); United Sttes v. Valera, 845 F.2d

923, 927-28 (11th Cir. 1988).

Duckett's claim of ineffective assistance also fails because it is procedurally barred.

The Florida Supreme Court found this claim to be legally insufficient, and such claims

cannot go forward in this Court.  Kelly, 377 F.3d at 1343; Sims, 155 F.3d 1297; Bolender,

16 F.3d 1547; Lindsey, 820 F.2d 1137.  Duckett has not even attempted to refute the

Florida Supreme Court's finding of legal insufficiency. His verbatim recitation of his argument before the state courts does not warrant habeas relief.

**E.     Absence of Evidence Corroborating Duckett's Defense Theory**

Duckett's last argument in this claim is that the prosecutor either withheld critical evidence corroborating Duckett's defense theory (that he did not commit the crime), or that his trial counsel was constitutionally ineffective for failing to properly investigate and present additional evidence to support this theory. More specifically, Duckett contends that the jury did not receive the following evidence: (1) a witness who saw Duckett leave in his car and saw the victim walk around the corner of the store towards the dumpster in the direction of her home; (2) another witness who saw the victim get into a blue hatchback car with a male with black hair and drive off down Sunset Avenue; (3) pages of notations from Duckett's own police notebook during his investigation of the victim's disappearance; (4) additional testimony from a trial witness that she saw Duckett return to the store around 11:00 p.m. or 11:15 p.m. to retrieve his coffee cup; (5) a rebuttal pathologist to refute the State's pathologist who testified that the victim was still alive when she went into the water; and (6) Duckett's report card from Polk County Community College (which proved he did not lie about attending the school). Duckett also claims his counsel was ineffective for repeatedly referring to Duckett's willingness to undergo a polygraph exam.

The Florida Supreme Court summarily denied this claim as legally insufficient. Duckett II, 918 So. 2d at 231. To the extent Duckett is asserting yet another Brady violation, the Florida Supreme Court's denial of the claim was not contrary to or an

unreasonable application of federal law. It is clear that all of the evidence Duckett claims was not presented to the jury at trial was either in the possession of Duckett's defense team, or was easily discoverable. In such circumstances, there cannot be a Brady violation. Maharaj, 432 F.3d at 1315, n. 4; Meros, 866 F.2d at 1308; Valera, 845 F.2d at 927-28.

The ineffective assistance of counsel claim is also without merit. First, Duckett has not established how the Florida Supreme Court's finding that the claim is legally insufficient is contrary to or an unreasonable application of federal law. Such procedurally barred claims cannot go forward here, and Duckett has made no attempt to overcome this bar. Second, even if this claim did go forward, Duckett has not satisfied either prong of Strickland. The record demonstrates that Duckett's trial counsel presented substantial evidence to support his theory of the case, and that counsel made a strategic decision not to call at least one of the witnesses now identified by Duckett (because on the day of trial the witness changed his story and claimed to have no memory of the events in question). Other evidence was merely cumulative of testimony and evidence trial counsel presented at trial.[25]

---

[25]For example, Duckett contends that his trial counsel should have admitted into evidence Duckett's handwritten notations from his police notebook, which Duckett purportedly made at the time he interviewed the victim's mother, and which state that the victim was wearing a blue/green shirt at the time she disappeared. Duckett now contends that these handwritten notations would establish that the victim was wearing a different shirt at the time she met Duckett at the convenience store than the shirt she was wearing when her body was discovered. These notebook pages, assuming they would have been admissible, were duplicative of the testimony Duckett and other witnesses provided at trial. Thus, the absence of these pages was not

(continued...)

Duckett's contention that his trial counsel should have called a rebuttal pathologist also fails.  The trial court held - after an extensive evidentiary hearing - that the rebuttal pathologist's conclusions did not dispute the findings and testimony of the State's pathologist who testified at trial.  (Ex. H-10, p. 1805).  These factual findings are entitled to great deference, and Duckett has not presented clear and convincing evidence to rebut them.[26]  Moreover, Duckett's trial counsel's reference to Duckett's willingness to take a polygraph examination is more exculpatory in its impact than inculpatory, and it was made clear to the jury that no test ever occurred.  <u>Davis v. Singletary</u>, 853 F. Supp. 1492, 1569 (M.D. Fla. 1994).  Duckett's guilt was established by a wealth of circumstantial evidence - whether or not he was willing to take a polygraph did not impact the weight of this evidence.  Thus, the Court cannot say that testimony concerning Duckett's willingness to submit to a polygraph unduly prejudiced him and affected his substantial rights.  <u>See United States v. Vigliatura</u>, 878 F.2d 1346, 1349-50 (11th Cir. 1989); <u>United States v. Hilton</u>, 772 F.2d 783, 786 (11th Cir. 1985).

This portion of Duckett's claim is Denied.

---

[25](...continued)
prejudicial to Duckett.

[26]The Court has also reviewed the testimony of the rebuttal pathologist, Dr. Jonathan Arden (Ex. H-24, pp. 1082-1113).  While Dr. Arden takes issue with the format the State's pathologist used to determine the cause of death, he does not directly contradict the findings and trial testimony of the State's pathologist.

**F.    Cumulative Analysis Claim**

Duckett is also making a cumulative error claim.  Although the Court has engaged in a sub-claim by sub-claim analysis of this claim and found each to be without merit, unless the trial was rendered fundamentally unfair, the Eleventh Circuit Court of Appeals has declined to entertain "cumulative error" claims.  See Cargill v. Turpin, 120 F.3d 1366, 1386-87 (11th Cir.1997).  For reasons previously articulated in this Order, the Florida Supreme Court has determined, and this Court agrees, Duckett's trial was not rendered fundamentally unfair.  Therefore, the cumulative effect claim is denied.

## CLAIM II

> MR. DUCKETT WAS DENIED THE EFFECTIVE ASSISTANCE
> OF COUNSEL AT THE PENALTY AND SENTENCING PHASE
> OF THE CAPITAL PROCEEDINGS.

Duckett's second claim is based on two specific complaints concerning trial counsel's performance at the penalty phase of the trial: (1) trial counsel's failure to object to portions of the prosecutor's closing argument which urged the jury to consider Duckett's status as a police officer at the time of the crime; and (2) trial counsel's failure to present sufficient evidence of mitigating circumstances, including a mental health expert.  Duckett raised this claim in his November 14, 1994 consolidated motion to vacate his sentences under Rule 3.850 (Ex. G-3 at 42-59).  The trial court denied the claim, holding that any additional evidence Duckett contends should have been presented was cumulative and therefore trial counsel was not constitutionally ineffective (Ex. G-7 at 36).

On appeal, the Florida Supreme Court affirmed the denial of relief.

In claim 2, Duckett argues that trial counsel was ineffective for failing to call additional witnesses to testify at the penalty phase about Duckett's good character, close family upbringing, loving relationship with his (now ex) wife and two sons, his decision to enter the police force, and general all-around "normal" life before the murder. Duckett fails to show either deficient performance or prejudice. At the penalty phase, trial counsel presented four witnesses: Duckett's brother, a family friend, his wife, and himself. These witnesses testified that Duckett lived an ordinary family life with his wife and two sons, was a good person and hard worker, and did not exhibit any strange sexual behavior outside his marriage or toward young girls. At the postconviction evidentiary hearing Duckett presented several additional witnesses, including several members of his extended family, as well as family friends and professional acquaintances. The testimony of these witnesses was generally cumulative to that presented at the penalty phase. See Teffeteller v. Dugger, 734 So. 2d 1009, 1021 (Fla. 1999) ("Much of the mitigating evidence that [defendant] faults counsel for not presenting is cumulative to that presented by the mental health expert and [defendant] during the resentencing proceeding."); Routly v. State, 590 So. 2d 397, 401 (Fla. 1991) (finding that defendant did not demonstrate reasonable probability that sentence would have been different where much of the proffered mitigating evidence was already before the judge and jury in a different form). Trial counsel's performance was not deficient simply because he did not present cumulative evidence. See Cole v. State, 841 So. 2d 490 (Fla. 2003) (rejecting ineffective assistance of counsel claim where counsel did not present cumulative evidence of defendant's drug problem); Valle v. State, 705 So. 2d 1331, 1334-35 (Fla. 1997) (rejecting ineffective assistance of counsel claim based on trial counsel's failure to present cumulative evidence). [FN15]

> [FN15]    Duckett partly relies on trial counsel's admission that it was probably a mistake not to call additional witnesses. However, this Court has stated that "an attorney's own admission that he or she was ineffective is of little persuasion in these proceedings." Kelley v. State, 569 So. 2d 754, 761

(Fla. 1990) (citing <u>Johnson v. Wainwright</u>, 463 So.
2d 207 (Fla. 1985) (quoting trial court's order)).

<u>Duckett II</u>, 918 So. 2d at 236-37.

Once again the Florida Supreme Court is correct. The trial court's findings of fact, to which the Court must give great deference, demonstrate that Duckett's trial counsel presented substantial testimony concerning Duckett's upbringing and mental state. An independent review of the record supports the trial court's findings. Thus the Court agrees that any further investigation and/or submission of evidence on these points would have been cumulative. There was no deficient performance or prejudice as required by <u>Strickland</u>. <u>See</u> <u>Turner v. Crosby</u>, 339 F.3d 1247, 1277 (11th Cir. 2003) (finding trial counsel's performance was not deficient for failing to submit cumulative testimony to the jury during the penalty phase of trial); <u>Glock v. Moore</u>, 195 F.3d 625, 636 (11th Cir.1999) (finding that, "where much of the new evidence that [petitioner] presents is merely repetitive and cumulative to that which was presented at trial," petitioner could not show prejudice); <u>Collier v. Turpin</u>, 177 F.3d 1184, 1199-1200 (11th Cir. 1999) (failure to interview additional potential witnesses in preparation for sentencing phase was not deficient performance where decision was essentially tactical, and counsel selected several witnesses to testify about defendant's past and character); <u>Cunningham v. Zant</u>, 928 F.2d 1006 (11th Cir. 1991) (decision of attorneys to present testimony only of 3 witness during penalty phase was not ineffective assistance; although there was evidence that attorneys might have uncovered additional persons to testify, attorneys made strategic decision to only call

quality witnesses).  See also Chandler v. United States, 218 F.3d 1305, 1316, n. 16 (11th Cir. 2000) ("Because the standard [for ineffective assistance] is an objective one, that trial counsel (at his post-conviction evidentiary hearing) admits that his performance was deficient matters little."); Tarver v. Hopper, 169 F.3d 710, 716 (11th Cir. 1999) (admissions during state collateral proceedings of deficient performance by trial counsel are not significant).  Duckett has failed to demonstrate that the state court disposition of this part of his claim was "contrary to" or constituted an "unreasonable application of" governing Supreme Court precedent.[27]

Duckett's focus on the prosecutor's comments during penalty phase closing arguments is equally misplaced.  The prosecutor's isolated reference to Duckett's position as a uniformed police officer at the time of the crime was merely a recitation of the facts. It did not constitute prosecutorial misconduct, was not unduly prejudicial, and trial counsel's failure to object to this statement does not equate to ineffective assistance.[28]

Claim II is denied.[29]

---

[27]Duckett's citation to Wiggins v. Smith, 539 U.S. 510 (2003) is unavailing.  In Wiggins, the Supreme Court found trial counsel to be ineffective where counsel conducted no investigation into the petitioner's background, and presented no mitigating evidence.  This is not such a case.

[28]For further discussion of Duckett's claims of prosecutorial misconduct, see the Court's discussion of Claim IV.

[29]Duckett also mentions in passing his trial counsel's failure to submit mental health expert testimony during the penalty phase of his trial.  He reasserts this issue in much more detail in Claim V, and the Court has addressed the merits of that claim.  The same analysis and result apply with equal force to Claim II.

**CLAIM III**

RULES PROHIBITING MR. DUCKETT'S COLLATERAL COUNSEL FROM INTERVIEWING JURORS TO DETERMINE IF CONSTITUTIONAL ERROR WAS PRESENT VIOLATES THE FIRST, SIXTH, EIGHTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND THE CORRESPONDING PROVISIONS OF THE FLORIDA CONSTITUTION AND DEPRIVES MR. DUCKETT OF ADEQUATE COUNSEL IN THE POST-CONVICTION PROCESS.

In his third claim, Duckett challenges the constitutionality of Rule 4-3.5(d)(4) of the Rules Regulating the Florida Bar, which expressly prohibits counsel from directly or indirectly communicating with jurors except in very limited circumstances.[30]  According to Duckett, this rule prevented his counsel for the post-conviction collateral proceedings from fully investigating whether any juror bias or misconduct took place during the guilt/innocence phase of the trial.  Duckett particularly focused on whether a young female juror was improperly coerced into changing her vote.  Duckett raised this claim in his November 14, 1994 consolidated motion to vacate his sentences under Rule 3.850, and the trial court denied the claim (Exs. G-3 at 124-28; G-7 at 36).

---

[30]Rule 4-3.5(d)(4) states, in relevant part that:

> A lawyer shall not . . . after dismissal of the jury in a case with which the lawyer is connected, initiate communication with or cause another to initiate communication with any juror regarding the trial except to determine whether the verdict is subject to legal challenge; provided, a lawyer may not interview jurors for this purpose unless the lawyer has reason to believe that grounds for such challenge may exist.

On appeal, the Florida Supreme Court denied this motion as procedurally barred because Duckett could have and should have raised it on direct appeal. <u>Duckett II</u>, 918 So. 2d at 231.[31] Duckett has not demonstrated any "cause and prejudice" for his procedural default, nor has he claimed that his appellate counsel was ineffective for failing to raise this claim on direct appeal. Therefore, the Court cannot consider this procedurally barred claim. <u>Sims v. Singletary</u>, 155 F.3d 1297, 1311 (11th Cir. 1998) (quoting <u>Johnson v. Singletary</u>, 938 F.2d 1166, 1174-75 (11th Cir. 1991)). <u>See</u> <u>also</u> <u>LeCroy</u>, 421 F.3d at 1260.[32]

The Florida Supreme Court alternatively denied this claim to the extent it could be interpreted as based on newly discovered evidence:

> Duckett is not entitled to juror interviews because his allegation involves the verdict itself and relates to the jury's deliberations. <u>See</u> <u>Johnson v. State</u>, 593 So. 2d 206, 210 (Fla. 1992) ("[A] verdict cannot be subsequently impeached by conduct which inheres in the verdict and relates to the jury's deliberations.")

---

[31]The holding of the Florida Supreme Court that this claim could and should have been raised on direct appeal seems incongruous at first impression since Duckett's argument is that the alleged unconstitutionality of the Florida rule hampered his counsel in the <u>post</u> <u>conviction</u> process. The Florida court was correct, however, because the legal argument was available on direct appeal regardless of the stage of the judicial proceedings at that time. Furthermore, the contention that the rule hampered post conviction counsel is of no constitutional significance because there is no constitutional right to effective assistance of counsel in post conviction collateral proceedings. <u>Pennsylvania v. Finley</u>, 481 U.S. 551, 555-56 (1987).

[32]Duckett also argues in his reply brief that the Florida Supreme Court's finding of procedural default "is reliant upon an analysis of the underlying federal constitutional claims" and therefore "the state court ruling is not independent and does not support a procedural default for federal court." (Doc. 32, p. 27). Not only does this argument make no sense, but it is without legal or factual support. It is clear that the Florida Supreme Court denied Duckett's juror interview claim on the separate and independent ground that he failed to raise it on direct appeal. There is no evidence that the Court relied on any federal precedent in making that determination.

Duckett II, 918 So. 2d at 231, n. 7.

Duckett has presented no evidence or made any legal argument demonstrating that the Florida Supreme Court's and the trial court's rejection of this claim is contrary to or an unreasonable application of federal law. Instead, he candidly admits that rules which prevent attorney interviews or other contact with jurors, or preclude juror testimony where the subject inheres in the verdict itself, have repeatedly been applied in criminal cases and held constitutional.[33] See, e.g., Tanner v. United States, 483 U.S. 107 (1987) (applying Federal Rule of Evidence 606(b) to exclude testimony of juror misconduct, including drug and alcohol use); Sims, 155 F.3d at 1312-13 (applying Florida rule that juror testimony is not relevant unless it concerns matters that do not essentially inhere in the verdict itself). Accordingly, Duckett has not shown that the Florida Supreme Court's decision was contrary to or an unreasonable application of clearly established law.

Duckett also requests an evidentiary hearing because he was unable to develop the factual basis for the claim in the state court proceedings. This same request was made to the state trial court and denied. Evidentiary hearings are permitted under §2254(e)(2) only where the claim relies on a new and retroactive rule of constitutional law, or on facts that could not be discovered during the state court proceedings and, if previously discovered, would be sufficient to establish by clear and convincing evidence that but for the

---

[33]See Doc. 1, pp. 116-17 ("It has been a 'near-universal and firmly established common-law rule in the United States' that juror testimony is incompetent to impeach a jury verdict.") (quoting Tanner v. United States, 483 U.S. 107, 117 (1987)).

constitutional error, no reasonable factfinder would have found the petitioner guilty. Duckett's claim does not raise a new rule, and does not establish that but for the alleged error, he would not have been found guilty. Rather, Duckett's request is akin to a fishing expedition based on vague allegations that a lone juror was emotional during jury deliberations. See Breedlove v. Moore, 279 F. 3d 952, 960 (11th Cir. 2002).

Claim III, as well as Duckett's request for an evidentiary hearing are Denied.

## CLAIM IV

THE PROSECUTOR'S INFLAMMATORY AND IMPROPER COMMENTS, ARGUMENTS, AND CONDUCT RENDERED MR. DUCKETT'S CONVICTION AND RESULTING DEATH SENTENCE FUNDAMENTALLY UNFAIR AND UNRELIABLE IN VIOLATION OF THE FIFTH, SIXTH, EIGHTH, AND FOURTEENTH AMENDMENTS.

In his fourth claim, Duckett argues that the prosecutor's comments and actions during both phases of his trial constituted prosecutorial misconduct which rendered his trial constitutionally unfair. This claim was not raised until Duckett's Rule 3.850 motions for post-conviction relief. The trial court denied the claim as both procedurally barred, because it could have and should have been raised on direct appeal, and because it was legally insufficient (Ex. G-7, p. 25). On appeal, the Florida Supreme Court affirmed on both grounds. Duckett II, 918 So. 2d at 231, n. 8. As such, Duckett cannot seek habeas relief here, and the Florida Supreme Court's ruling was not contrary to or an unreasonable application of federal law. See Sims, 155 F.3d at 1311; LeCroy, 421 F.3d at 1260.

Duckett concedes that his trial counsel did not object to a majority of the prosecutor's arguments or actions during either stage of his trial, and that appellate counsel never raised any of these issues during his direct appeal. This silence, Duckett contends, amounts to constitutionally ineffective assistance of counsel such that he is still entitled to habeas relief. Duckett asserts that his counsel's ineffective assistance both provides an exception to the procedural bar, and a separate claim for relief. Regardless of how it is couched, Duckett's claim fails.

In order to assess whether Duckett's counsel was constitutionally ineffective, the Court must consider the underlying merits of this claim for, if the claim itself is without merit, counsel cannot be faulted for failing to raise it at trial or on appeal. Card v. Dugger, 911 F.2d 1494, 1520 (11th Cir. 1990). This Circuit has held that improper comments by a state prosecutor during trial justifies federal habeas relief only if the comments rendered the hearing so fundamentally unfair as to deny the defendant due process. Whisenhant v. Allen, 556 F. 3d 1198, 1207 (11th Cir. 2009); Nelson v. Nagle, 995 F.2d 1549, 1555 (11th Cir. 1993). It "is not enough that the prosecutors' remarks were undesirable or even universally condemned." Darden v. Wainwright, 477 U.S. 168, 181 (1986) (internal citations omitted). "The relevant question is whether the prosecutors' comments 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" Id. (quoting Donnelly v. DeChristoforo, 416 U.S. 637 (1974)); see also Parker v. Head, 244 F. 3d 831, 838 (11th Cir. 2001).

To establish fundamental unfairness, the petitioner must show that, absent the improper conduct, there is a reasonable probability that the sentencing outcome would have been different. Presnell v. Zant, 959 F.2d 1524, 1528 (11th Cir. 1992). See also, Nelson 995 F.2d at 1555; Johnson v. Wainwright, 778 F.2d 623, 630-31 (11th Cir. 1985); Tucker v. Kemp, 762 F.2d 1496, 1503-09 (11th Cir. 1985) (en banc); Drake v. Kemp, 762 F.2d 1449, 1458-61 (11th Cir. 1985). The Court must analyze the conduct under the totality of the circumstances, Hall v. Wainwright, 733 F.3d 766, 773 (11th Cir. 1984), and consider different factors such as: (1) whether the remarks were isolated, ambiguous, or unintentional; (2) whether there was a contemporaneous objection by defense counsel; (3) the trial court's instructions; (4) the weight of aggravating and mitigating factors; (5) the degree to which the challenged remarks have a tendency to mislead the jury and to prejudice the accused; and (6) the strength of the competent proof to establish the guilt of the accused. Land v. Allen, 573 F. 3d 1211, 1219-20 (11th Cir. 2009); Davis v. Zant, 36 F.3d 1538, 1546 (11th Cir. 1994) (internal citations omitted). Applying this test to Duckett's claim, it is clear that absent the prosecutor's comments, the sentencing outcome would not have been any different.

Duckett has cherry picked through the prosecutor's lengthy closing argument and rebuttal and located various isolated comments which he contends were so severe as to deprive Duckett of due process. For example, Duckett points to three references by the prosecutor that the jury was beginning its deliberations on the day after Mother's Day, as well as a lone statement that "[i]f you come back not guilty, out that door [Duckett] goes."

These comments merely state the obvious and are not prejudicial in any inflammatory sense; they are innocuous, and cannot be found to have materially influenced the verdict in any way.  See e.g., Ex. A-10, pp. 1883, 1885; United States v. Bailey, 123 F.3d 1381, 1402 (11th Cir. 1997); Cargill v. Turpin, 120 F.3d 1366, 1383 (11th Cir. 1997).

Similarly, the Court concludes that the prosecutor's isolated comment that the victim died a "slow" death was contradicted by the prosecutor's own statement during rebuttal that the victim's rape, strangulation, and death all happened very quickly (Ex. A-10, p. 1953); and the argument that the victim was killed because she threatened to report her rape – that is, to eliminate a witness – was a permissible inference that could be drawn from the evidence.  In addition, the prosecutor's statements during his rebuttal argument that the three female witnesses who testified about prior sexual encounters with Duckett were afraid of him were also reasonable inferences that could be drawn from the evidence and were made in response to the argument of Duckett's trial counsel (Ex. A-10, p. 1960).  See Bailey, 123 F.3d at 1400 ("While a prosecutor may not exceed the evidence in closing argument . . . , he may state conclusions drawn from the evidence [, and] . . . there is no prohibition on 'colorful and perhaps flamboyant' remarks if they relate to the evidence adduced at trial.").

Duckett also urges the Court to find several comments by the prosecutor to be improper bolstering or vouching for witnesses and evidence.  Those comments merely stated that the State had done everything it could to gather all possible evidence, and that all of the evidence pointed to Duckett as the murderer.  Such comments clearly do not rise

to the level of unconstitutional vouching.  See United States v. Hernandez, 921 F.2d 1569, 1573 (11th Cir. 1991).  Nor does the prosecutor's comments that its hair analysis expert Michael Malone was "the very best hair examiner there was."  The comments were made during rebuttal, were based on evidence adduced at trial concerning Agent Malone's qualifications and experience, and were in direct response to Duckett's trial counsel's attacks on Agent Malone during both cross examination and closing argument.  As such, the prosecutor's comments about Agent Malone did not render the  trial fundamentally unfair.  See United States v. Lopez, 590 F.3d 1238, 1257-58 (11th Cir. 2009); Hernandez, 921 F.2d at 1573; United States v. Fuentes, 877 F.2d 895, 900-01 (11th Cir. 1989); Davis v. Singletary, 853 F. Supp. 1492, 1560 (M.D. Fla. 1994), aff'd, 119 F.3d 1471 (1997).[34]

Several other of the alleged instances of misconduct have been grossly misrepresented.  For example, Duckett contends that the prosecutor wrongly stated that Duckett did not offer to come into work the morning the victim's body was found.  However, a review of the actual transcript demonstrates that the prosecutor said nothing of the sort, but merely reiterated the testimony presented at trial (Ex. A-10, p. 1899).  Duckett also claims that the prosecutor testified about the type of soil found at the scene of the crime. Again, the record shows that the prosecutor in fact summarized the existing evidence about

---

[34]The case cited by Duckett on this point, United States v. Eyster, 948 F.2d 1196 (11th Cir. 1991), involves facts far more egregious then even the most favorable interpretation the Court could afford to Duckett in this case.  In Eyster, the prosecutor misled the jury by attempting to show that a government witness, whose credibility had been seriously damaged on cross-examination, was merely mistaken in his testimony and did not commit willful perjury.  No such actions took place during Duckett's trial.

the soil at the scene, and made a reasonable inference that such soil would dry and fall off of Duckett's car (Ex. A-10, p. 1954). A prosecutor may "assist the jury in analyzing, evaluating, and applying the evidence" and, therefore may "urge [ ] the jury to draw inferences and conclusions from the evidence produced at trial." United States v. Johns, 734 F.2d 657, 663 (11th Cir. 1984) (emphasis omitted). Thus, "an attorney's statements that indicate his opinion or knowledge of the case as theretofore presented before the court and jury are permissible if the attorney makes it clear that the conclusions he is urging are conclusions to be drawn from the evidence." Id.

Another example involves Duckett's allegations that the prosecutor improperly urged the jury to require Duckett to prove his own innocence. Such a claim borders on dishonest - at no time did the prosecutor ever state or intimate that Duckett must prove his own innocence. Rather, the prosecutor summarized the evidence admitted at trial, and pointed out that all of the promises defense counsel made during opening statements as to what he would prove during trial did not come to fruition (Ex. A-10, p. 1901, 1945). Moreover, the prosecutor explicitly stated that

> The Defendant is presumed innocent and doesn't have to prove himself innocent, but he is presumed innocent only until that presumption is overcome by the evidence beyond a reasonable doubt and that has been done. That has been done.

Ex. A-10, p. 1902. See also Ex. A-10, p. 1886.

Even the comment which Duckett contends was the most "egregious" did not play out as Duckett wishes the Court to believe. Duckett argues that during rebuttal, the

prosecutor urged the jury to convict Duckett because he sentenced the victim to be raped and to die, and that Duckett served as the victim's prosecutor, judge, jury, and executioner. A review of what the prosecutor actually said, however, makes clear that he never at any time urged the jury to convict Duckett on this basis. Rather, the prosecutor told the jury that his interpretation of the events was the only reasonable conclusion that could be drawn from the evidence, and that after the jury analyzed all of the evidence, it would reach the only reasonable conclusion that Duckett was guilty of first degree murder (Ex. A-10, p. 1974). The prosecutor was merely doing his job by arguing that the evidence supported the state's theory and not the defense's theory, and urging the jury to believe the State's witnesses' testimony. See Muhammad v. McNeil, No. 08-15214, 2009 WL 3738510 at * 2 (11th Cir. Nov. 10, 2009); Johns, 734 F.2d at 663.

The Court also cannot find any impropriety or prejudice in the prosecutor's argument which summarized - in a very dispassionate way - the instructions concerning lesser included offenses. The record is quite clear that Duckett's attorney agreed and stipulated to the fact that this was a first degree premeditated murder and sexual battery case, and that the lesser included offenses did not apply. See e.g., Ex. A-10, pps. 1842, 1844, 1854-56, 1913. The record is equally clear that at no point did anyone ever argue or present any evidence demonstrating the applicability of any lesser included offenses.

The last two comments Duckett cites relate to statements made by the prosecutor during closing concerning evidence Duckett did not present at trial. Duckett first complains that the prosecutor's statement that Duckett had his own hair analysis expert but did not

57

call him as a witness was constitutionally prejudicial.  The record demonstrates, however, that Duckett's counsel immediately objected to this statement, and that the trial court found it to be a fair comment.(Ex. A-10, p. 1965-68).  The trial court's ruling is not contrary to or an unreasonable application of constitutional law.  <u>See</u> <u>e.g.</u>, <u>United States v. Chirinos</u>, 112 F.3d 1089, 1099-1100 (11th Cir. 1997) ("it is not improper to comment on the failure of the defense, as opposed to the defendant, to counter or explain the evidence"); <u>United States v. Norton</u>, 867 F.2d 1354, 1364 (11th Cir. 1989) (prosecutor's reference to the defense's failure to counter or explain testimony or evidence presented does not violate the Fifth Amendment).

Duckett next points to the prosecutor's statement that the defense never submitted any polygraph test results, despite Duckett's testimony that he was willing to take such a test.  It is clear that the prosecutor's statement was merely a summary of the evidence - Duckett testified during trial that he was willing to take a polygraph, and admitted that he never took one.  Duckett's trial counsel made much of this point during the presentation of evidence, attempting to place the blame on the investigators for not repeatedly asking Duckett to take a polygraph.  Thus it is not unduly prejudicial or fundamentally unfair for the prosecutor to mention this testimony during closing.  <u>See</u> <u>Davis v. Singletary</u>, 853 F. Supp. 1492, 1568-69 (M.D. Fla. 1994).

In addition to the prosecutor's closing argument, Duckett points to three events that took place during the guilt/innocence phase of trial.[35]  The first relates to the prosecutor's questioning of several witnesses concerning whether Duckett ever took a polygraph.  As with the statements during closing, the prosecutor's questions during the presentation of evidence were appropriate, and in response to questioning by Duckett's trial counsel on this very point, as well as Duckett's own testimony.  (Ex. A-9, pp. 1702-03, 1754).  It is clear that Duckett himself brought this issue into the case, he cannot now claim a violation of his constitutional rights based on his own actions.  See United States v. Johnson, 730 F.2d 683, 691 (11th Cir. 1984) (inadmissible evidence is admissible as rebuttal evidence where defense counsel opens the door to such evidence on direct or cross examination).

The second incident involved the prosecutor's questioning of Deputy Aleno - one of the investigators assigned to this case - as to whether Duckett ever offered up his uniform for inspection after the victim's body was discovered (Ex. A-7, pp. 956-57).  Again, this questioning was conducted during re-direct, in response to Duckett's trial counsel's cross examination of Deputy Aleno, and was not inherently prejudicial in any inflammatory way.

The last incident concerns the prosecutor's presentation of evidence concerning the location of the victim's fingerprints on the hood of Duckett's police car.  Duckett contends

---

[35]Duckett's only reference to alleged misconduct during the penalty phase is the prosecutor's isolated comment during closing argument that the murder was "atrocious" based on the fact that the victim was only 11 years old and would not get any older.  The Court finds that this lone statement did not render his penalty phase fundamentally unfair, particularly in light of the instructions by the judge that the jury was not to consider argument of counsel in reaching its recommendation.

that the prosecutor improperly, and over the sustained objections of defense counsel, conducted a live demonstration of a woman sitting on Duckett's police car to establish the State's theory as to how the victim's fingerprints were placed on the car. Once again, a review of the trial transcript belies this claim. It is clear that the trial court authorized the prosecutor's fingerprint expert to identify the fingerprints of both Duckett and the victim on the hood of the car, and to give her expert opinion as to how those prints got onto the hood (Ex. A-6, pp. 1173, 1194-99). Duckett's counsel objected to the testimony, and the trial court ruled that any objections could be resolved through cross examination. There was nothing improper or unduly prejudicial, and Duckett has made no showing of how the admission of such evidence was contrary to or an unreasonable application of Supreme Court precedent.[36]

Having found that none of the identified incidents of alleged misconduct were improper, the Court also finds that, whether taken together or separately, they did not infect the entire trial or cause a denial of fundamental fairness. Aside from the evidence supporting Duckett's conviction, the trial court clearly and correctly instructed the jury on numerous occasions that what the lawyers said during opening and closing arguments was not evidence in the case and should not be considered as such, and that the case must be

---

[36]The last instance Duckett cites to is a claim that during his closing argument, the prosecutor held up a photograph of the victim and deliberately placed the photograph within the eyesight of the victim's mother. Ducket claims that the prosecutor did this to ensure that the mother would become hysterical and run out of the courtroom - which she did. Duckett has presented no record support for this claim, and the incident would have no significance in any event absent evidence that the prosecutor had deliberately orchestrated the scene through prior collusion with the victim's mother.

decided only upon the evidence presented at trial. There is no reasonable probability that the result of the trial would have been different if these comments and actions had not occurred. Since these challenged incidents did not result in such prejudice to vitiate the fairness of the entire trial, Duckett's counsel's performance cannot be deemed constitutionally ineffective for failing to raise these incidents either at trial or on direct appeal. <u>Land</u>, 573 F.3d at 1221; <u>Diaz v. Secretary for the Dept. of Corrections</u>, 402 F.3d 1136, 1142 (11th Cir. 2005). Claim IV is denied.

### CLAIM V

> FAILURE TO OBTAIN AN ADEQUATE MENTAL HEALTH EVALUATION AND TO PROVIDE THE NECESSARY BACKGROUND INFORMATION TO A MENTAL HEALTH CONSULTANT DENIED MR. DUCKETT A FAIR TRIAL AND SENTENCING PROCEEDING IN VIOLATION OF THE FIFTH, SIXTH, EIGHTH, AND FOURTEENTH AMENDMENTS.

Duckett's fifth claim asserts that his trial counsel was constitutionally ineffective when he failed to retain a mental health expert and did not submit mental health expert testimony to the jury during the penalty phase. Duckett contends that if such testimony had been presented, the jury might have found sufficient non-statutory mitigating circumstances to recommend a life sentence instead of the death penalty.

Duckett raised this claim in his consolidated amended motion for postconviction relief, and the trial court denied the claim (Exs. G-3; G-7). On appeal, the Florida Supreme Court affirmed, and held that Duckett failed to establish either deficient performance or prejudice. <u>Duckett II</u>, 918 So. 2d at 237.

The United States Supreme Court has stated that "[a] defendant's mental condition is not necessarily at issue in every criminal proceeding." Ake v. Oklahoma, 470 U.S. 68, 82, 84 L. Ed. 2d 53, 105 S. Ct. 1087 (1985). As he testified at the evidentiary hearing, trial counsel had no reason to suspect that any mental mitigating evidence could be developed. See Mills v. State, 603 So. 2d 482, 485 (Fla. 1992) (finding trial counsel's actions did not constitute deficient performance where trial counsel had no reason to suspect that any mental health mitigating evidence could be developed). This is not a case where the defendant had a severe mental disorder that should have been presented to the jury. See e.g., Rose v. State, 675 So. 2d 567, 573 (Fla. 1996) ("[S]evere mental disturbance is a mitigating factor of the most weighty order, and the failure to present it in the penalty phase may constitute prejudicial ineffectiveness.").

Even the expert Duckett presented in support of his postconviction motion did not find any mental problems. Dr. Patricia Fleming, a clinical psychologist, testified that she evaluated and tested Duckett, reviewed information about his life, and interviewed some of his family members. She summarized Duckett's test results as follows:

> The test results show that this is an intellectually sound man who is able to organize information, to think rationally and act purposefully and deal effectively with the environment. He has the intellectual strengths and capacities to do that. He comes across as a man who is a caring man, wants to please people, is not – doesn't have according to the test results an underlying anger, hostility, aggressive, sadistic side to him. He comes across as, actually typical of people who are functioning on the outside, that are outside of prison. He did not give evidence of malingering.

Duckett's claim is essentially that a mental health expert should have been presented to reinforce the idea that he does *not* have mental health problems or sadistic tendencies. Such an expert would merely have provided cumulative evidence to that already

presented at the penalty phase through the testimony of Duckett and his friends and family. Duckett fails to establish deficient performance or prejudice on this claim.

Id.

The Court finds that the Florida Supreme Court's decision was not contrary to or an unreasonable application of clearly established law. Duckett has presented no evidence, despite participating in five separate evidentiary hearings before the trial court, establishing that testimony from a mental health expert that Duckett was mentally sound would have presented any mitigating circumstances such that the jury's advisory opinion would have changed. Rather, it is clear to the Court that any such expert testimony would have been cumulative in nature - merely confirming what Duckett's other witnesses testified to - that Duckett is a "normal" person without any mental deficiencies.

Applying Strickland, Duckett also cannot demonstrate that his trial counsel's performance was constitutionally deficient, or that he suffered any prejudice. See Turner, 339 F.3d at 1277; Glock, 195 F.3d at 636. It is equally clear that Duckett's sanity at the time of the offense was never in question, much less a significant factor at trial, therefore the requirements of Ake v. Oklahoma did not apply to this case. See, Ake, 470 U.S. at 83. See also Newland v. Hall, 527 F.3d 1162, 1213 (11th Cir. 2008) (counsel not deficient for failing to obtain mental health evaluation where no evidence indicated that petitioner

suffered from mental illness); <u>Housel v. Head</u>, 238 F.3d 1289, 1296 (11th Cir. 2001)

(same).[37]  Claim V is Denied.

## CLAIM VI

> THE TWO AGGRAVATING FACTORS WERE UNCONSTITUTIONALLY VAGUE AND IMPROPERLY ARGUED AND APPLIED IN VIOLATION OF THE EIGHTH AND FOURTEENTH AMENDMENTS.

In Duckett's sixth claim, he argues that the trial court's penalty phase jury instructions

concerning the two statutory aggravating factors were unconstitutionally vague and did not

provide the jury with appropriate guidance.

At the conclusion of the penalty phase of Duckett's trial, the trial judge gave the jury

the following instructions, in pertinent part:

> The aggravating circumstances that you may consider are limited to any of the following that are established by the evidence beyond a reasonable doubt:

> The crime for which the Defendant is to be sentenced was committed while he was engaged in the commission of the crime of Sexual Battery; and

> The crime for which the Defendant is to be sentenced was especially heinous, atrocious, or cruel.

---

[37]In one sentence in his petition, Duckett mentions that mental health expert testimony would have also been relevant during the guilt/innocence phase of his trial to determine whether Duckett had formed the specific intent to commit first degree murder.  (Doc. 1, p. 138).  To the extent that this claim can be read to allege ineffective assistance with respect to the guilt/innocence phase, such a claim was not raised before the State courts, and therefore is procedurally barred.  <u>See</u>  <u>Kelly</u>, 377 F.3d at 1343.

> If you find the aggravating circumstances do not justify the death penalty, your advisory sentence should be one of life imprisonment without possibility of parole for twenty-five years.

Exh. A-11, p. 2063.

The trial judge did not give any further limiting or narrowing instructions with respect to either aggravating factor; and, under the subsequent decision of the Supreme Court in Maynard v. Cartwright, 486 U.S. 356 (1988), the absence of such limiting instructions with respect to the heinous, atrocious or cruel ("HAC") aggravating factor can constitute a violation of the Eighth Amendment.[38]  See also Espinosa v. Florida, 505 U.S. 1079 (1992).

The State contends that this claim is procedurally barred.  The State is correct.

When the trial judge concluded his instructions, he asked both the prosecutor and Duckett's trial counsel if they had any objections or corrections to the instructions as read. Duckett's counsel responded in the negative.  Exh. A-11, pp. 2066-67.  Duckett's appellate counsel also did not raise this claim in his direct appeal.

Duckett instead raised this claim for the first time during his Rule 3.850 postconviction motions, arguing that the trial judge should have instructed the jury that the

---

[38] Maynard was not decided until June 6, 1988, after the conclusion of Duckett's trial. However, Duckett's conviction and sentence did not become final under Teague until the Florida Supreme Court issued its mandate February 12, 1991 when the 90-day period for filing his petition for certiorari expired.  Beard v. Banks, 542 U.S. 406, 411 (2004).  Maynard therefore applies to Duckett's case.  Moreover, it has been determined that Maynard did not establish a "new rule" under Teague v. Lane so that the law of the Maynard decision would apply to Duckett's case in any event.  Stringer v. Black, 503 U.S. 222 (1992).  Whether the Maynard decision governs Duckett's case is a separate question that was addressed in Espinosa and was answered affirmatively; but Espinosa has been determined to have announced a "new" rule under Teague so that it does not apply retroactively.  Lambrix v. Singletary, 520 U.S. 518 (1997).

"committed during a felony" aggravating factor cannot support a death sentence by itself, and that the jury should have been given a limiting instruction further defining the HAC factor. Both the trial court and the Florida Supreme Court found Duckett's claim to be procedurally barred because it could have - and should have - been raised on direct appeal. See Ex. G-7, pp. 26-29; Duckett II, 918 So. 2d at 231. It follows that the present claim is also procedurally barred in this Court unless Duckett can show both cause and prejudice under Wainwright v. Sykes, 433 U.S. 72 (1977). See also Sochor v. Florida, 504 U.S. 527 (1992); Sims, 155 F.3d at 1311; Medina v. Singletary, 59 F.3d 1095, 1113-14 (11th Cir. 1995); Kight v. Singletary, 50 F.3d 1539, 1543-1545 (11th Cir. 1994); Johnson v. Singletary, 938 F.2d 1166, 1174-75 (11th Cir. 1991).

In an effort to show "cause" for his procedural default, Duckett argues that his trial counsel was constitutionally ineffective for failing to object to the inappropriate HAC aggravating factor jury instruction.[39] The trial court determined that the claim of ineffective

---

[39]It is unclear from Duckett's petition whether he is asserting ineffective assistance of counsel as a separate claim or if he is asserting it in an attempt to establish "cause" to overcome the procedural bar. A review of the record does little to clarify the issue. In his original Rule 3.850 motions, it appears, albeit inartfully, that Duckett was asserting two separate claims: one challenging the HAC aggravator instruction and one asserting ineffective assistance of trial counsel for failing to object to the instruction. See Ex. G-3, pp. 79-89. The trial court addressed both claims and found both to be without merit. See Ex. G-7, pp. 26-29. In his appeal briefs, however, Duckett does not mention a separate ineffective assistance of counsel claim; rather he merely raises the issue in his reply brief in an attempt to establish cause and prejudice in response to the State's argument that any challenges to the HAC aggravator are procedurally barred. See Ex. L, p. 22. As a result, the Florida Supreme Court did not address a separate ineffective assistance of counsel claim with respect to the HAC aggravator instruction in denying Duckett's Rule 3.850 motions. It therefore appears, that at least with respect to Claim VI, any separate claim for ineffective assistance would be itself procedurally barred, and that Duckett is raising
(continued...)

assistance was unsubstantiated, conclusory, and insufficient, and that trial counsel could not be held deficient for failing to anticipate a future change to the jury instructions (Ex. G-7, pp. 26-29).

Duckett's claim, as presented to this Court, is similarly deficient. <u>See</u> Doc. 1, p. 149, n. 84, Doc. 32, pp. 22-25. He does not list a single federal decision where an attorney, faced with similar factual circumstances, was found to have performed deficiently; nor does he present any argument or provide any legal support for his claim that counsel's failure to object to the HAC aggravator instruction caused him any prejudice. Instead, Duckett makes numerous broad and conclusory statements that his counsel was deficient, and that this deficiency establishes cause to overcome his procedural default. On this basis alone the Court concludes that Duckett has not satisfied the requirements of <u>Strickland</u>.[40]

Even if Duckett had made some cognizable legal argument, the Court finds that his counsel's failure to object to the HAC jury instruction does not equate to ineffective

_____

[39](...continued)
ineffective assistance here merely in an attempt to establish the "cause" prong required under <u>Wainwright v. Sykes</u>. The Court recognizes that this may be a distinction without a difference given that Duckett did raise and exhaust his ineffective assistance of counsel claim with respect to the HAC aggravator instruction in his state habeas petition. <u>See</u> Claim XV, <u>infra</u>.

[40]Duckett's challenge to the "committed during a felony" instruction is similarly deficient. This challenge is procedurally barred as it was not raised at trial or on direct appeal, and Duckett has not made any cognizable argument that cause or prejudice exists such that the bar can be overcome. Moreover, Duckett has not presented any federal or state legal authority to support his contention that a jury must be instructed that the "committed during a felony" aggravator cannot alone support a death sentence, and the Court is unaware of the existence of any such decisions. As such, the Florida Supreme Court's summary rejection of this portion of Duckett's claim is not contrary to or an unreasonable interpretation of federal law.

assistance under Strickland.  Until the 1992 decision in Espinosa v. Florida, 505 U.S. 1079 (1992), the jury was considered by the Florida courts to be an adviser and the judge was considered to be the sentencer.  The Florida Supreme Court, therefore, did not require that jury instructions on the HAC factor be amplified in accordance with its own narrowing construction of the terms "heinous, atrocious or cruel" as announced in State v. Dixon, 283 So.2d 1, 9 (Fla. 1973).  See Smalley v. State, 546 So.2d 720 (Fla. 1989).  Indeed, in Espinosa v. State, 589 So.2d 887, 894 (Fla. 1991), the Florida Supreme Court, citing its decision in Smalley, found no error in a failure to explain the HAC aggravator to the jury when the trial judge, who was presumed to be conscious of the narrow meaning of HAC laid down in Dixon, found as the sentencer that the HAC factor was present and the Florida Supreme Court confirmed on review that the trial judge's conclusion was supported by the record.  Moreover, the Court of Appeals for the Eleventh Circuit was itself persuaded by this reasoning in the years before 1992 as evidenced by Bertolotti v. Dugger, 883 F.2d 1503, 1526-27 (11th Cir. 1989), which held that the lack of jury instructions narrowing the scope of the HAC aggravator was not a ground for invalidating the death sentence because the Florida Supreme Court had adopted a constitutionally narrow definition which guided the trial judge in imposing sentence.  The 1992 decision of the United States Supreme Court in Espinosa, therefore, reversing the Florida Supreme Court, made a dramatic change in capital sentencing jurisprudence in Florida as it relates to jury instructions concerning the HAC aggravator.  See Lambrix v. Singletary, 520 U.S. 518 (1997) (holding that Espinosa announced a "new rule" within the meaning of Teague v. Lane).

Against that legal landscape as it existed prior to 1992, the conclusion is inescapable that competent lawyers trying capital cases in Florida in the mid 1980s, especially before the decision in <u>Maynard v. Cartwright</u> in 1988, might well have overlooked the possibility of making a meaningful objection to (or requesting elaboration upon) the Florida Court's standard jury instructions on the HAC aggravating factor. That being true, Duckett's trial counsel cannot be faulted to the point of a finding that he rendered constitutionally deficient assistance within the meaning of <u>Strickland v. Washington</u> and its progeny.

Moreover, on this record, the Petitioner cannot demonstrate resulting prejudice under <u>Wainwright v. Sykes</u> even if one assumes, for purposes of analysis, that the representation he received was deficient with respect to jury instructions. Upon a review of the entire record and all evidence, the trial judge made the following findings of fact and determined that the HAC factor was present because:

> 1. The Defendant, JAMES AREN DUCKETT, a police officer at the time of the offense, in uniform, enticed the victim, Theresa Mae McAbee, an eleven year old child, into his marked patrol car. Thereafter, the Defendant drove the victim to a remote location whereupon the Defendant raped, strangled, and drowned the victim.

> . . . .

> 3. The victim died as a result of strangulation and subsequent drowning. However, death was not immediate. The evidence shows that the victim died after tremendous pressure was exerted upon her throat for several minutes. During that time, the victim was conscious for one or two minutes and undoubtably terrified at the realization that she was going to die. Thereafter, the victim was thrown into a nearby lake where she died after ingesting a quantity of water.

69

4.     The Defendant is an adult male who weighed approximately two hundred twenty-five (225) pounds at the time of the offense, and who stands approximately six (6) feet tall. The victim was four (4) feet, eleven (11) inches tall and weighed eighty-three (83) pounds at the time of her death.

. . . .

III.     CONCLUSION

. . . .

3.     The child victim in this case was strangled by an adult during which she was conscious, and subsequent to which she was thrown into a lake where she ingested water and died.

There is little if any probability that the trial judge would have imposed a different sentence. Also, as the Court of Appeals recognized in Kight v. Singletary, 50 F.3d 1539, 1545 n.16 (11th Cir. 1995), prejudice cannot be presumed. The Florida Supreme Court would not have been constitutionally required to reverse the death sentence even if objection had been made and the rule of Espinosa applied to the case notwithstanding the decision in Lambrix v. Singletary, supra. This is so because the Florida Supreme Court could have reweighed the evidence or conducted a harmless error analysis.

In view of the lack of cause or prejudice excusing the procedural default in the state courts with respect to the preservation and presentation of this Claim VI to the extent it is based on the HAC aggravator, it is procedurally barred and is DENIED for that reason.[41]

---

[41]In footnote 80 to this claim, Duckett appears to raise another claim of ineffective assistance of counsel based on the failure "to retain the services of a pathologist to successfully counter the argument that the state had proved a sexual assault beyond a reasonable doubt." The Court finds this claim to be speculative at best - there is no evidence in the record that would dispute in any way the fact that Teresa McAbee had been sexually assaulted prior to her death; nor has Duckett pointed to any evidence presented at the five separate evidentiary hearings from

(continued...)

**CLAIM VII**

MR. DUCKETT'S SENTENCING JURY WAS MISLED BY ARGUMENT AND INSTRUCTIONS WHICH UNCONSTITUTIONALLY AND INACCURATELY DILUTED ITS SENSE OF RESPONSIBILITY FOR SENTENCING. COUNSEL WAS INEFFECTIVE IN FAILING TO LITIGATE THIS ISSUE.

In his seventh claim, Duckett contends that his constitutional rights were violated when the trial court and the prosecutor repeatedly told the jury that its role during the penalty phase was advisory, a recommendation, of little importance, and that the trial judge would make the final decision. As a result, he contends that the jury's sense of responsibility was diminished in violation of <u>Caldwell v. Mississippi</u>, 472 U.S. 320 (1985).

Trial counsel did not object to the prosecutor's comments or the court's jury instructions either during the trial, or on direct appeal. Instead, Duckett's counsel belatedly raised this claim in his postconviction Rule 3.850 motions. The trial court denied the claim as procedurally barred and upon a finding that "[t]he jury instructions as a whole appropriately characterized the jury's role in the sentencing proceeding under Florida law." <u>See</u> Ex. G-7, p. 29. On appeal, the Florida Supreme Court summarily denied this claim as procedurally barred. <u>Duckett II</u>, 918 So. 2d at 231. The Court agrees with the Florida Supreme Court's decision, and finds that it is not contrary to or an unreasonable

---

[41](...continued)
any experts in pathology challenging the fact of Ms. McAbee's sexual assault. As a result, the Court finds this tenuous argument to be both legally and factually insufficient, and concludes that Duckett has not demonstrated how trial counsel's performance in this area was deficient. <u>See</u> <u>Tejada v. Dugger</u>, 941 F. 2d 1551, 1559 (11th Cir. 1991) (vague, conclusory, speculative, or unsupported claims are insufficient to support claims of ineffective assistance of counsel).

interpretation of federal precedent.  See Wainwright v. Sykes, 433 U.S. 72; Sochor, 504 U.S. 527; Sims, 155 F.3d at 1311; Medina, 59 F.3d at 1113-14.

Duckett further states in his petition that his trial counsel's performance was constitutionally deficient when he failed to object to the prosecutor's comments and jury instructions.  It is unclear from the petition whether Duckett is making this argument in an effort to establish "cause" to overcome the procedural bar, or to establish a separate and independent ineffective assistance of counsel claim.  The distinction is irrelevant, however, as the Court finds that Duckett's trial counsel's failure to object does not constitute ineffective assistance under Strickland.

In Caldwell, the Supreme Court stated that "it is constitutionally impermissible for a death sentence to rest on a determination made by a sentencer who has been led to believe that the responsibility for determining the appropriateness of the defendant's death lies elsewhere."  472 U.S. at 328-29.  With respect to sentencing schemes such as Florida's where the jury acts in an advisory capacity and the trial judge renders the ultimate decision, the Supreme Court has held that "[t]o establish a Caldwell violation, a defendant necessarily must show that the remarks to the jury improperly described the role assigned to the jury by local law."  Romano v. Oklahoma, 512 U.S. 1, 8 (1994).  The Eleventh Circuit has further expanded on Caldwell and held that

> [I]t is clear that the references to and descriptions of the jury's sentencing verdict in this case as an advisory one, as a recommendation to the judge, and of the judge as the final sentencing authority are not error under Caldwell – because they

accurately characterize the jury's and judge's sentencing roles under Florida law.

Davis v. Singletary, 119 F.3d 1471, 1482 (11th Cir.1997).  See also Johnston v. Singletary, 162 F.3d 630, 643 (11th Cir.1998) (rejecting Caldwell claim and related ineffective assistance claim because remarks to the jury "accurately described the jury's advisory role during a capital trial under Florida law").

In Duckett's case, the trial judge instructed the jury at the guilt/innocence phase that:

> Your duty as to the charge of Murder in the First Degree is to determine if the Defendant is guilty or not guilty, in accord with the law.  Final decision as to what punishment shall be imposed upon a conviction of Murder in the First Degree rests solely with the Judge of this Court; however, the law requires that you, the Jury, render to the Court an advisory sentence as to what punishment should be imposed upon the Defendant.

Exh.  A-10 at 1987.

At the beginning of the penalty phase, the trial court gave the following instructions:

> You have found the Defendant guilty of Murder in the First Degree.
>
> The punishment for this crime is either death or life imprisonment without the possibility of parole for twenty-five years.  Final decision as to what punishment shall be imposed rests solely with the Judge of this Court; however, the law requires that you, the Jury, render to the Court an advisory sentence as to what punishment should be imposed upon the Defendant.

The State and the Defendant may now present evidence relative to the nature of the crime and the character of the Defendant. You are instructed that this evidence when considered with the evidence you have already heard is presented in order that you might determine, first, whether sufficient aggravating circumstances exist that would justify the imposition of the death penalty and, second, whether there are mitigating circumstances sufficient to outweigh the aggravating circumstances, if any.

Exh. A-11 at 2028-29.

At the conclusion of the penalty phase, the trial judge gave the following instruction:

Ladies and gentlemen of the Jury, it is now your duty to advise the Court as to what punishment should be imposed upon the Defendant for his crime of Murder in the First Degree. As you have been told, the final decision as to what punishment shall be imposed is the responsibility of the Judge; however, it is your duty to follow the law that will now be given you by the Court and render to the Court an advisory sentence based upon your determination as to whether sufficient aggravating circumstances exist to justify the imposition of the death penalty and whether sufficient mitigating circumstances exist to outweigh any aggravating circumstances found to exist.

. . . .

The fact that the determination of whether you recommend a sentence of death or sentence of life imprisonment in this case can be reached by a single ballot should not influence you to act hastily or without due regard to the gravity of these proceedings. Before you ballot you should carefully weigh, sift and consider the evidence, and all of it, realizing that human life is at stake, and bring to bear your best judgment in reaching your advisory sentence.

Exh. A-11, pp. 2062, 2064

As in <u>Davis</u> and <u>Johnston</u>, the jury instructions provided to the jury during both stages of Duckett's trial accurately explained the jury's role under Florida law as it existed at that time and were taken from Florida's standard jury instructions - a fact that Duckett concedes.[42]  The Florida Supreme Court has repeatedly affirmed that the standard jury instructions properly describe the jury's role in Florida.  <u>See</u> <u>Archer v. State</u>, 673 So.2d 17, 21 (Fla. 1996) (Florida standard jury instructions adequately describe role to jury); <u>Pope v. Wainwright</u>, 496 So.2d 798, 805 (Fla.1986).  No federal cases were ignored or misapplied in the State courts' rejection of this issue as both procedurally barred and, alternatively, without legal merit.  As such, Duckett cannot show that his trial counsel was ineffective for failing to object to remarks and instructions that did not give rise to a <u>Caldwell</u> violation.  Failure to raise non-meritorious issues is not considered ineffective assistance of counsel.  <u>Card</u>, 911 F.2d at 1520.  Claim VII does not warrant habeas corpus relief.[43]

### CLAIM VIII

PENALTY PHASE INSTRUCTIONS IMPROPERLY SHIFTED THE BURDEN TO MR. DUCKETT TO PROVE THAT DEATH WAS INAPPROPRIATE. THE SENTENCING JUDGE HIMSELF EMPLOYED THIS IMPROPER STANDARD IN SENTENCING MR. DUCKETT TO DEATH.  FAILURE TO OBJECT OR SUBMIT ARGUMENT ON THE INSTRUCTIONS EFFECTIVELY

---

[42]<u>See</u> Doc. 1, p. 154 (recognizing that the jury instructions were "drawn verbatim from the standard penalty phase instructions.").

[43]To the extent Duckett is arguing that the prosecutor's comments and jury instructions violate <u>Apprendi v. New Jersey</u>, 530 U.S. 466 (2001), that claim is foreclosed as <u>Apprendi</u> does not apply retroactively.  <u>See</u> <u>Harris v. United States</u>, 536 U.S. 545, 581 (2002); <u>Turner v. Crosby</u>, 339 F.3d 1247, 1285 (11th Cir. 2003); <u>McCoy v. United States</u>, 266 F.3d 1245, 1258 (11th Cir. 2001).

RENDERED DEFENSE COUNSEL'S REPRESENTATION INEFFECTIVE IN VIOLATION OF MR. DUCKETT'S FIFTH, SIXTH, EIGHTH, AND FOURTEENTH AMENDMENT RIGHTS.

Duckett's next claim of error is also based on the trial court's penalty phase jury instructions concerning the weighing of aggravating and mitigating factors. During the penalty phase, the trial judge gave the following instructions:

> The State and the Defendant may now present evidence relative to the nature of the crime and the character of the Defendant. You are instructed that this evidence when considered with the evidence you have already heard is presented in order that you might determine, first, whether sufficient aggravating circumstances exist that would justify the imposition fo the death penalty and, second, whether there are mitigating circumstances sufficient to outweigh the aggravating circumstances, if any.

> . . . .

> As you have been told, the final decision as to what punishment shall be imposed is the responsibility of the Judge; however, it is your duty to follow the law that will now be given you by the Court and render to the Court an advisory sentence based upon your determination as to whether sufficient aggravating circumstances exist to justify the imposition of the death penalty and whether sufficient mitigating circumstances exist to outweigh any aggravating circumstances found to exist.

> . . . .

> If you find the aggravating circumstances do not justify the death penalty, your advisory sentence should be one of life imprisonment without possibility of parole for twenty-five years.

> Should you find sufficient aggravating circumstances do exist, it will then be your duty to determine whether mitigating circumstances exist that outweigh the aggravating circumstances.

Each aggravating circumstance must be established beyond a reasonable doubt before it may be considered by you in arriving at your decision.

If one or more aggravating circumstances are established, you should consider all the evidence tending to establish one or more mitigating circumstances and give that evidence such weight as you feel it should receive in reaching your conclusion as to the sentence that should be imposed.

A mitigating circumstance need not be proved beyond a reasonable doubt by the Defendant. If you are reasonably convinced that a mitigating circumstance exists, you may consider it as established.

The sentence that you recommend to the Court must be based upon the facts as you find them from the evidence and the law. You should weigh the aggravating circumstances against the mitigating circumstances, and your advisory sentence must be based on these considerations.

Ex. A-11, pp. 2028-29; 2062-64

Duckett argues that these instructions, which contain an almost verbatim recitation of Florida Statute § 921.141,[44] unconstitutionally shifted to Duckett the burden of proving that the death penalty was not appropriate, *i.e.* created a presumption in favor of the death penalty. Duckett supports this argument by citing to the Florida Supreme Court's 1973 decision State v. Dixon, which provides that a death sentence "could be given if the state showed the aggravating circumstance outweighed the mitigating circumstances," making it clear that the burden of proof is upon the state. State v. Dixon, 283 So.2d 1 (Fla. 1973).

_____

[44]That statute provides, in relevant part, that the jury shall deliberate and render an advisory sentence to the court, based on "whether sufficient mitigating circumstances exist which outweigh the aggravating circumstances found to exist." Fla. Stat. § 921.141(2)(b).

Duckett first raised this claim in his Rule 3.850 motion, and the trial court rejected it on its merits (Ex. G-7 at 31). Even though this claim was clearly procedurally barred, the Florida Supreme Court summarily denied the claim as without merit, citing to <u>Freeman v. State</u>, 761 So. 2d 1055 (Fla. 2000) and <u>Demps v. Dugger</u>, 714 So. 2d 365 (Fla. 1998). Both of these decisions hold that "there is no merit to the burden shifting claim." <u>Freeman</u>, 761 So. 2d at 1067; <u>Demps</u>, 714 So. 2d at 367-68.

The Florida Supreme Court's decision is not contrary to or an unreasonable application of federal law. The United States Supreme Court has repeatedly upheld Florida's death penalty scheme, including the method of weighing aggravating and mitigating factors against each other as described in Duckett's jury instructions. <u>See</u> <u>Hildwin v. Florida</u>, 490 U.S. 638 (1989); <u>Proffitt v. Florida</u>, 428 U.S. 242 (1976).[45] <u>See also</u> <u>Henderson v. Dugger</u>, 925 F.2d 1309, 1317-18 (11th Cir.1991) (finding jury instruction that explained that it was the jury's duty to determine whether the mitigating circumstances outweigh the aggravating circumstances did not cause the jury to presume that death was the appropriate penalty); <u>Bertolotti v. Dugger</u>, 883 F.2d 1503, 1524-25 (11th Cir. 1989) (affirming trial judge's instructions to the jury that it must determine whether sufficient mitigating circumstances exist to outweigh any aggravating circumstances found to exist).

---

[45]The United States Supreme Court has upheld this same instruction in other jurisdictions as well. <u>See</u> <u>Blystone v. Pennsylvania</u>, 494 U.S. 299 (1990); <u>Boyde v. California</u>, 494 U.S. 370 (1990).

Given that no state or federal court has ever invalidated Florida's death penalty scheme based on this particular argument, Duckett is not entitled to relief here.

Because the Court finds that the trial court's instructions to the jury at the penalty phase are not unconstitutional, Duckett's additional contention that his trial counsel was ineffective for failing to object to the instructions is without merit.  United States v. Nyhuis, 211 F.3d 1340, 1344 (11th Cir.  2000); Bertolotti, 883 F.2d at 1523; Alvord v.  Wainwright, 725 F.2d 1282, 1291 (11th Cir. 1984).  Claim VIII is Denied.

## CLAIM IX

> MR. DUCKETT'S ABSENCE FROM CRITICAL STAGES OF THE PROCEEDINGS VIOLATED HIS RIGHTS TO DUE PROCESS AND A FAIR TRIAL.

The ninth claim in Duckett's petition focuses on his absence from the following courtroom proceedings: (1) a conference in chambers discussing the hair analysis experts; (2) a conference in chambers discussing information concerning a potential defense witness and defense counsel's possibility of filing a motion for mistrial or to dismiss; (3) a charge conference held in chambers discussing the jury instructions for the guilt/innocence phase; (4) a charge conference held in chambers discussing the jury instructions for the penalty phase; and (5) various bench conferences held throughout the trial discussing various legal and evidentiary issues.  According to Duckett, these proceedings were "crucial stages of his trial," and his absence violated his Sixth Amendment right to a fair trial and his Fourteenth Amendment due process rights.

Trial counsel raised this issue for the first time in his Rule 3.850 motions; he did not object to Duckett's absences from trial proceedings, and did not raise the issue on direct appeal. The trial court denied Duckett's claim as both procedurally barred and without merit, based on a finding that none of Duckett's absences occurred during critical stages of his trial (Ex. G-7, pp. 34-35). The Florida Supreme Court held that this claim was procedurally barred, and that to the extent Duckett was also alleging ineffective assistance of counsel, such a claim was without merit. Duckett II, 918 So. 2d at 231, n. 7. As such, Duckett's claim is also procedurally barred in this Court. Coleman v. Thompson, 501 U.S. 722, 750 (1991); Harris v. Reed, 489 U.S. 255, 109 S.Ct. 1038 (1989).

Even if this claim was not procedurally barred, it is without substantive merit. Due process does not require a defendant's presence when it would be useless or only slightly beneficial. Snyder v. Massachusetts, 291 U.S. 97, 106-07 (1934), overruled on other grounds, Malloy v. Hogan, 378 U.S. 1 (1964). As the Supreme Court stated in Kentucky v. Stincer, 482 U.S. 730, 745 (1987), "a defendant is guaranteed the right to be present at any stage of the criminal proceeding that is critical to its outcome if his presence would contribute to the fairness of the procedure." See also Hodges v. Attorney General, State of Fla., 506 F.3d 1337 (11th Cir. 2007); Diaz v. Sec'y for Dept. Of Corrections, 402 F.3d 1141 (11th Cir. 2005). Thus, in order to determine whether Duckett's claim has any merit, the Court must determine both whether the proceedings in question were "critical" to the outcome of the trial, and whether Duckett was in fact absent.

The first claimed error involves Duckett's absence from a meeting between counsel and the trial judge in chambers discussing legal issues concerning a possible meeting between hair analysis experts retained by both sides to discuss their findings (Ex. A-4, pp. 690-706). At the conclusion of the conference, both sides agreed that such a meeting would not take place. Before the meeting began, the trial judge asked Duckett's counsel if Duckett's presence was required. Trial counsel responded "no sir, I think not." Id., at 690. Thus, it is clear from the record that this conference involved purely legal matters for which there is no constitutional requirement that Duckett be present. See In re Shriner, 735 F.2d 1236, 1241 (11th Cir.1984); Provenzano v. Singletary, 3 F. Supp. 2d 1353, 1377 (M.D. Fla. 1997). Duckett has not made any showing as to how his presence at this conference would have contributed to its fairness. The Court therefore cannot find that Kentucy v. Stincer was violated. See United States v. Vasquez, 732 F.2d 846, 848-49 (11th Cir. 1984) ("The right to be present at every stage of trial does not confer upon the defendant the right to be present at every conference at which a matter pertinent to the case is discussed, or even at every conference with the trial judge at which a mater relative to the case is discussed.").

Duckett next challenges his absence from a chambers conference where a potential defense witness, Rick Reynolds, was discussed. This challenge is without merit because, as Duckett himself admits, he personally waived his right to be present during this

proceeding.[46]  See Diaz v. United States, 223 U.S. 442, 445 (1912) (recognizing right of defendant to knowingly absent himself from the courtroom after trial has commenced).  The day after the chambers conference, Duckett, along with his trial counsel, participated in a separate bench conference during which his counsel informed Duckett of the discussions concerning Rick Reynolds, as well as counsel's decision not to move for a mistrial (Ex. A-8, p. 1597).  Duckett then twice waived his presence - once upon questioning from counsel and again upon questioning from the bench.  Id. at 1597-98.  Moreover, Duckett has not even suggested how his presence at the conference would have been useful in ensuring a more reliable determination of matters at issue in his trial, or would have changed the outcome of the conference or his trial, and the Court cannot find anything in the record to support Duckett's claim.  See Stincer, 482 U.S. at 747.

Duckett's challenges with respect to the two charge conferences held in chambers similarly fail.  Duckett's counsel conveniently omits the fact that Duckett, with his counsel standing by his side, and in response to direct questioning from the trial judge (including an advisement from the trial judge that Duckett had the right to be present), voluntarily waived his right to attend the charge conference for the guilt/innocence phase of trial (Ex. A-10, pp. 1834-35).  Duckett also has not made any showing of how his presence at these conferences would have provided any benefit or affected the outcome of the conferences

---

[46]Duckett contends both that he cannot waive his right to be present during such conferences, and that his waiver was not knowing or voluntary.  Both contentions are without legal and factual support and merit no further discussion.

or the trial itself.  See Escobar v. McDonough, No. 1:06-cv-207-MP-AK; 2008 WL 2635565

at * 9 (N.D. Fla. July 2, 2008) (absence from jury instruction charge conference, which is

primarily a legal proceeding, does not violate Kentucky v. Stincer); Provenzano, 3 F. Supp.

2d at 1377 (same).

Lastly, Duckett claims that he was denied access to twenty-two (22) bench

conferences.  Approximately one-half of these conferences involved purely scheduling

issues, while the other half involved legal issues concerning the admission of evidence and

questioning of witnesses.  The trial court determined that these bench conferences were

not "critical stages" of trial, and therefore Duckett had no right to be present.  The trial court

also found that Duckett's counsel was present and participated in each bench conference

and that trial counsel had a habit of advising a client of all discussions that took place

outside of his presence.

It is settled Florida law that a defendant does not have a constitutional right to be

present at bench conferences which involve purely legal matters.  Coney v. State, 653

So.2d 1009, 1013 (Fla.), cert. denied, 516 U.S. 921, 116 S.Ct.  315 (1995); Hardwick v.

Dugger, 648 So.2d 100 (Fla.  1994); see also Florida Criminal Rule of Procedure 3.180(a)

(listing instances where presence of Defendant is required - presence at bench

conferences where legal issues are discussed is not included).  Florida law mirrors the

Supreme Court's decision in Stincer.  See 482 U.S. at 745.  Petitioner's presence at any

of the bench conferences identified in his petition would not have been useful in ensuring

a more reliable determination of any of the matters at issue in his trial.  Id. at 747, 107 S.Ct.

2658. These various bench conferences involved essentially legal argument, and there is no constitutional right to be present at such proceedings. <u>See</u> <u>Shriner</u>, 735 F.2d at 1241; <u>United States v. Arredondo</u>, Nos. 8:04-cr-297-T-23TGW, 8:07-cv-1978-T-23TGW; 2008 WL 596786 at * 2 (M.D. Fla. Feb. 29, 2008) (defendant's absence from sidebar where defense counsel was present did not violate <u>Kentucky v. Stincer</u>). <u>See</u> <u>also</u> <u>United States v. Gagnon</u>, 470 U.S. 522, 527 (1985) (the respondents "could have done nothing had they been at the conference, nor would they have gained anything by attending."). The Florida Supreme Court's resolution of this question was not "objectively unreasonable" - and there is no constitutional infirmity with regard to this matter.

Duckett further contends that his trial counsel was constitutionally ineffective for failing to object at trial and/or raise on appeal Duckett's absences from these various trial proceedings.[47] Because the Court finds that Duckett's absences do not constitute a constitutional violation, trial counsel's failure to raise this issue at trial or on appeal was not deficient and does not merit habeas relief. <u>Card</u>, 911 F.2d at 1520. Claim IX is Denied.

## CLAIM X

THE DEATH PENALTY CONSTITUTES CRUEL AND UNUSUAL PUNISHMENT IN VIOLATION OF THE EIGHTH AMENDMENT TO THE UNITED STATES CONSTITUTION. EXECUTION BY LETHAL INJECTION CONSTITUTES CRUEL AND UNUSUAL PUNISHMENT.[48]

---

[47]Duckett raises ineffective assistance both in an attempt to overcome the procedural bar and as a separate claim.

[48]Although the title of this claim suggests that Duckett's argument is based on a challenge (continued...)

The tenth claim in Duckett's petition is a challenge to Florida's death penalty system on the following grounds: (1) the present scheme in Florida is impermissibly vague and promotes arbitrary and capricious prosecution and utilization; (2) no guidelines are provided to state attorneys instructing them on how to apply and interpret the statutory circumstances where the death penalty may be imposed; (3) there is no mandatory review of other murder cases with aggravating circumstances not deemed death penalty eligible; (4) the decision to seek the death penalty is left to the discretion of the prosecutor, and is therefore subject to arbitrariness and capriciousness; (5) the death penalty has been discriminately imposed against those accused of killing caucasians and females; (6) the "Baldus" study demonstrates that factors of race, sex, or economic status of the accused and the victim impact the imposition of the death penalty; and (7) the trial court's refusal to allow Duckett to interview the jurors precludes his ability to demonstrate that "virtually everyone involved in this case held views that impermissibly allowed race and sex of the victim to play a role in the consideration of the sentence imposed upon Mr. Duckett." Based on these alleged deficiencies, Duckett contends that the decision to seek the death penalty and his death sentence were the direct result of the inherent discrimination in Florida's death penalty statute.

---

[48](...continued)
to the method of execution, Duckett does not raise this issue anywhere in the text of his argument, or in any other place in his over 200 page petition. It therefore appears that the reference to lethal injections was in error, and the Court will not consider this argument any further. See also Baze v. Rees, ___ U.S. ___, 128 S.Ct. 1520 (2008) (finding lethal injection does not constitute cruel and unusual punishment).

This claim is without merit for a multitude of reasons.  First, the trial court determined that Duckett's argument that Florida's death penalty scheme was vague, arbitrary and capricious was both without merit and procedurally barred due to Duckett's trial counsel's failure to raise this argument on direct appeal (Ex. G-7, pp. 29-32).  The Florida Supreme Court summarily affirmed, finding that this argument was procedurally barred.  Duckett II, 918 So. 2d at 231.  For the same reasons, this claim is also barred in this Court.  Coleman, 501 U.S. at 750.

As to Duckett's six other arguments, it does not appear that they were raised before the trial court or the Florida Supreme Court at any time.  Claims that are not fully exhausted before the state courts cannot properly be raised for the first time in a federal habeas proceeding.  See 28 U.S.C. § 2254(b)(1); Picard v. Connor, 404 U.S. 270, 275 (1971); Kelly v. Sec'y for Dept. Of Corrections, 377 F.3d 1317, 1343 (11th Cir. 2004).  On this basis alone Claim X is due to be denied.

Even if Duckett's arguments were not procedurally barred, the Court finds that they are wholly without merit.  The United States Supreme Court has repeatedly upheld Florida's death penalty scheme, and has found that Florida's system is neither arbitrary and capricious, nor is it without clearly defined standards.  See, e.g., Espinosa v. Florida, 505 U.S. 1079 (1992); Sochor v. Florida, 504 U.S. 527 (1992); Hildwin v. Florida, 490 U.S. 638 (1989); Spaziano v. Florida, 468 U.S. 447 (1984); Proffit v. Florida, 428 U.S. 242 (1976).  See also Mills v. Singletary, 161 F.3d 1273 (11th Cir. 1998).  Moreover, in Gregg v. Georgia, 488 U.S. 153 (1976), the United States Supreme Court made clear that

preconviction prosecutorial discretion to determine whether to seek the death penalty is permissible and constitutional.  See also Eddmonds v. Illinois, 469 U.S. 894 (1984) (Marshall, dissenting).

Duckett's reliance on the "Baldus Study" is also futile because, as Duckett himself recognizes, the United States Supreme Court has previously held that this study does not establish that any decision makers acted with a discriminatory purpose in violation of the Equal Protection Clause.  McCleskey v. Kemp, 481 U.S. 279 (1987).  Lastly, Duckett's claim that he was not able to interview the decision makers in this case mirrors his argument in Claim III, which the Court previously determined to be without merit.[49]  See Claim III, *supra.*  Claim X is denied.[50]

## CLAIM XI

THE CIRCUIT COURT ERRED WHEN IT DENIED MR. DUCKETT DNA TESTING ON ALL ITEMS BASED SOLELY ON THE LANGUAGE IN THE FLORIDA SUPREME COURT'S ORDER, AND WITHOUT CONDUCTING AN INDEPENDENT ANALYSIS OF THE EVIDENCE TO DETERMINE IF THERE WAS A REASONABLE PROBABILITY THAT THE EVIDENCE WOULD RESULT IN MR. DUCKETT'S ACQUITTAL, IN VIOLATION OF THE EIGHTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION.

---

[49]To the extent Duckett is also claiming that he was denied the right to interview the prosecutors about their decision to charge Duckett with a capital crime, this claim is completely devoid of any factual or legal support and therefore does not warrant habeas relief.

[50]Duckett again raises a conclusory ineffective assistance of counsel claim in an effort to overcome the procedural bar.  As discussed above, his appellate counsel was not ineffective for failing to raise such clearly meritless arguments.

At oral argument before the Florida Supreme Court on appeal from the trial court's denial of Duckett's Rule 3.850 motions, counsel for both Duckett and the State represented that DNA testing might be possible on certain items of clothing introduced into evidence. Based on these representations, on March 21, 2003, the Florida Supreme Court remanded the case to the trial court "to determine whether clothing exists that can be tested for DNA." (Ex. M). The order further stated that "if the trial court determines that DNA testing is possible on any *clothing*, any such testing shall be completed, . . . within 180 days of the date of this Order." Id. (emphasis added).

On remand, the trial court held a hearing and allowed the parties to argue what items existed that could be tested for DNA evidence. The court determined that the victim's underpants, blue jeans, socks, shirt, shoes, and several smears from clothing and vaginal swabs, as well as fingernail scrapings from the victim could be tested (Ex. M-14, pp. 1-2). The trial court denied Duckett's counsel's request to test two cigarette butts found at the scene, a flip flop found in the water by the victim, two beer bottles and one beer can. Id. at 3. In so doing, the court found that these additional items were outside the scope of the Florida Supreme Court's order of remand, and "such testing would amount to nothing more than a fishing expedition." Id.

On appeal, the Florida Supreme Court affirmed, holding that the trial court properly interpreted the original remand order as limiting the scope of DNA testing to items of clothing. While recognizing that the trial court did permit DNA testing on fingernails and vaginal swabs, the Florida Supreme Court noted that the testing of these items was done

88

at the request of the Florida Department of Law Enforcement ("FDLE") to assist them in complying with the Supreme Court's original order. In contrast, the FDLE made no such request as to the other items Duckett sought to have tested. The Florida Supreme Court then agreed with the trial court that testing these additional items would amount to a fishing expedition, noting that "[t]he relinquishment order was narrowly drafted and intended to be applied narrowly." Duckett II, 918 So. 2d at 238-39.[51]

Duckett has not submitted any legal authority suggesting a constitutional violation under similar facts. Moreover, Florida has established a detailed process for seeking postconviction DNA testing in death penalty cases, a process which Duckett - despite being repeatedly admonished to do so - has admittedly never pursued; and, as a result, the Florida Supreme Court expressly stated that this process did not apply to Duckett's appeal. See Florida Rule of Criminal Procedure 3.853; Duckett II, 918 So. 2d at 238.

Claim XI, as well as Duckett's request for additional discovery and DNA testing before this Court are denied.

### CLAIM XII

THE STATE COURT ERRED WHEN IT DENIED PETITIONER'S
MOTION REQUESTING THE STATE'S COMPLIANCE WITH

---

[51]As the Florida Supreme Court noted: "Curiously, Duckett argued in his motion to the circuit court opposing the State's motion to release additional evidence that [the Supreme Court's] order should be read narrowly to include only clothing - the very opposite of his current argument." Duckett II, 918 So. 2d at 238, n. 16. Duckett is not now arguing that the testing of the additional evidence at the behest of FDLE was error and it seems that the evidence did not produce any relevant information. In addition, Duckett informed the trial court that he did not wish to pursue any further testing of the vaginal swab because the sample was too small to produce any meaningful results under current technology.

BRADY AND KYLES. THE STATE'S CONTINUING VIOLATION OF BRADY AND KYLES DENIED PETITIONER DUE PROCESS AND THE RIGHT TO HAVE EVIDENCE WHICH WILL EXONERATE HIM TESTED FOR DNA.

This claim, which first arose during the time of the Florida Supreme Court's limited remand for DNA testing, is confusing at best, and without any merit in any event. Based on a review of the entire record, it appears that Duckett is arguing that the State has violated Brady v. Maryland[52] and Kyles v. Whitley[53] by not engaging in an all-out search for allegedly missing evidence. Although Duckett correctly cites the law concerning the government's obligation to provide a defendant with exculpatory evidence, Duckett does not explain how this law applies to his case. Specifically, Duckett nowhere describes what potential evidence might be missing,[54] or, more importantly, how such allegedly missing evidence would exonerate him. Instead, Duckett appears to want the State to engage in a broad and limitless search, to present evidence accounting for each and every piece of potentially exculpatory evidence in this case, and to give further assurances that the State has provided him with all existing exculpatory evidence. Duckett has not, however, provided any legal authority to support his demands.[55]

---

[52]373 U.S. 83 (1963).

[53]514 U.S. 419 (1995).

[54]While there is some mention of DNA testing, including the inability to test certain clothing and hair samples at this time, Duckett nowhere specifies what evidence he alleges is missing and should be tested. In essence, he asks the Court to demand that the State prove a negative.

[55]In Kyles v. Whitley, 514 U.S. 419 (1995), the United States Supreme Court made clear (continued...)

At the conclusion of a lengthy hearing on DNA testing, the trial court ruled that

Duckett's motion for compliance with <u>Brady</u> and <u>Kyles</u> was beyond the scope of the Florida

Supreme Court's limited remand order, and therefore, the trial court did not have any

jurisdictional authority to grant the motion (Ex. M-9, pp. 2376-2390).[56]  The Florida

Supreme Court agreed:

> Duckett also contends that the circuit court erred by ruling that
> the motion for compliance with <u>Brady</u> and <u>Kyles</u> addressed
> issues beyond the scope of our relinquishment of jurisdiction.  As
> discussed above, the relinquishment order gave narrow
> instructions for the circuit court to determine if clothing existed
> that could be tested for DNA.  Duckett had by this time already
> received a full evidentiary hearing on his postconviction motion
> before the circuit court and oral argument before this Court.  By
> relinquishing jurisdiction, we did not intend to give Duckett the
> opportunity to assert new claims.
>
> Nevertheless, Duckett claims that the State is under a continuing
> duty throughout all proceedings to comply with <u>Brady</u>.  <u>See</u>
> <u>Strickler</u>, 527 U.S. 263, 144 L. Ed. 2d 286, 119 S. Ct. 1936; <u>High</u>
> <u>v. Head</u>, 209 F. 3d 1257, 1264 n. 8 (11th Cir. 2000) ("The State's
> duty to disclose exculpatory material is ongoing.").  This duty
> extends to postconviction proceedings.  <u>See</u> <u>Thompson v.</u>

---

[55](...continued)
that a <u>Brady</u> discovery violation occurs in one of three situations: (1) where previously undisclosed
evidence revealed that the prosecution introduced trial testimony that it knew or should have
known was perjured; (2) where the government failed to accede to a defense request for
disclosure of some specific kind of exculpatory evidence; and (3) where the government failed to
volunteer exculpatory evidence never requested, or requested in only a general way.  514 U.S.
at 432-33.  Duckett does not allege, and the record does not support, a finding that any of these
three situations exist in the present case.

[56]In an effort to appease all sides, the trial court agreed that the State would contact
Lifecodes, the agency that conducted the original DNA testing, and verify that it had returned all
samples relevant to this case (Ex. M-9, pp. 2391-2393).  It appears that this was done and that
no further samples were returned to either party.

Calderon, 151 F.3d 918, 935 n. 12 (9th Cir. 1998) ("The Brady duty is an ongoing one, and continued to bind the prosecution through [defendant's] habeas proceedings."). While this is a correct statement of the law, Duckett fails to explain how he can bring the current claim. He had the opportunity to make these arguments in his postconviction motion, which he amended twice - the second time over two years after the original motion was filed. To assert a new Brady claim at this point, Duckett must file a successive motion under Florida Rule of Criminal Procedure 3.851(e)(2) and comply with its requirements. We relinquished jurisdiction for a limited purpose, and the circuit court properly ruled that the motion for compliance with Brady and Kyles goes beyond the scope of our order.

Duckett II, 918 So. 3d at 239.

Duckett has not shown how the Florida Supreme Court's disposition of this claim was contrary to or an unreasonable application of federal law. It is clear that the Florida Supreme Court's remand order was limited - at the time he was before the trial court, Duckett did not have permission to request relief under Brady or Kyles, and he has not presented any legal authority stating otherwise. It is equally clear that a state procedure exists for seeking the relief that Duckett desires, and that he has not availed himself of it. Thus, it appears that this claim was not properly exhausted in the state courts and cannot be resolved here. 28 U.S.C. § 2254(b)(1); Kelly, 377 F.3d at 1343.

Moreover, even if Duckett was not barred from seeking such relief in the manner he did, his request is overbroad and speculative. Duckett is not arguing that the State has violated Brady; rather, he is arguing that the courts erred when they did not order the State not to violate Brady and Kyles. In other words, Duckett has not pointed to any potentially exculpatory evidence that the State has failed to turn over, nor does Duckett allege that the

92

State has acted in bad faith. He instead wants the State to conduct a lengthy search and verify, once again, that it has turned over everything. Not only has Duckett failed to point to any federal law establishing entitlement to such relief, but a review of the record demonstrates that this procedure was previously accomplished during the five separate evidentiary hearings on Duckett's Rule 3.850 motions. The Florida Supreme Court refusal to permit Duckett to re-litigate this issue yet again is not contrary to or an unreasonable application of federal law.[57] See Green v. McNeil, No. 3:07-cv-66-J-33TEM, 2008 WI 2756477 at ** 13-14 (M.D. Fla. July 14, 2008) (finding no Brady violation where defendant failed to explain relevance of missing evidence or how it was favorable to defense, and where there was no evidence that evidence was willfully or inadvertently suppressed). See also Osborne, 129 S.Ct. at 2319-20.

Claim XII and Duckett's request for discovery on this claim are denied.

## CLAIM XIII

JAMES DUCKETT IS INNOCENT AND HIS EXECUTION WOULD BE A MISCARRIAGE OF JUSTICE.

Duckett's next claim is that he is actually innocent, and therefore ineligible for the death penalty and his execution would constitute a miscarriage of justice. Duckett has not cited to, and the Court cannot find, any Supreme Court precedent establishing that habeas

---

[57]Cf. United States v. Meros, 866 F.3d 1304, 1309 (11th Cir. 1989) ("A prosecutor has no duty to undertake a fishing expedition in other jurisdictions in an effort to find potentially impeaching evidence every time a criminal defendant makes a Brady request for information regarding a government witness.").

relief is appropriate based solely on a claim of actual innocence despite having received a fair trial.[58] Rather, the United States Supreme Court has held that claims of actual innocence can only survive if the petitioner can establish both that he is in fact innocent and that his conviction was the probable result of a constitutional violation. See Schlup v. Delo, 513 U.S. 298 (1995).[59] See also Davis v. Terry, 465 F.3d 1249, 1251-52 (11th Cir. 2006); Arthur v. Allen, 452 F.3d 1234, 1245-46 (11th Cir. 2006). As discussed throughout this Order, none of Duckett's claims of constitutional error have any merit, therefore Schlup does not apply.[60]

The Florida Supreme Court reached this same result, denying Duckett's actual innocence claim in his state petition for habeas corpus as "legally insufficient" and without

---

[58]As Duckett acknowledges, the United States Supreme Court's decision in Herrera v. Collins, 506 U.S. 390 (1993) did not rule on the viability of a substantive claim of actual innocence. In fact, the Supreme Court has never decided what the precise burden of proof for a freestanding actual innocence claim would be.

[59]Schlup applies this "reasonable probability" standard to the fundamental miscarriage of justice exception to the procedural default doctrine applied in habeas cases. See 513 U.S. at 327. The Supreme Court has stated that if a freestanding actual innocence claim were to exist, the standard for satisfying such a claim would be necessarily higher than the standard used in Schlup, and that even Schlup applies only in the extraordinary case. See House v. Bell, 547 U.S. 518, 538-39, 555 (2006). Accordingly, if the Court finds, which it does, that Duckett cannot satisfy the lesser standard in Schlup, it stands to reason that Duckett also could not establish a freestanding claim of actual innocence (assuming for the moment that such a claim were even to exist).

[60]To the extent Duckett is also pursuing this claim under a theory of newly discovered evidence, it is equally futile. Not only did the Florida Supreme Court find that Duckett's "newly discovered" evidence - i.e. the evidence of other potential suspects and Gurley's recantation - was not credible (a decision the Court finds to be without constitutional error); but the United States Supreme Court has held that "claims of actual innocence based on newly discovered evidence have never been held to state a ground for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceeding." Herrera, 506 U.S. at 400. See also Brownlee, 306 F.3d at 1065.

a "valid basis for habeas relief." Duckett II, 918 So. 2d at 239. Given the absence of any United States Supreme Court precedent conclusively recognizing such a claim, as well as Duckett's failure to satisfy the lesser Schlup standard, the Court cannot find that the Florida Supreme Court's dismissal of Duckett's actual innocence claim is either contrary to or an unreasonable application of federal law. Claim XIII is denied.

## CLAIM XIV

> DURING THE DIRECT APPEAL, THE STATE OF FLORIDA FAILED TO DISCLOSE PERTINENT FACTS WHICH WERE NECESSARY TO THIS COURT'S CONSIDERATION OF THE ISSUES RAISED BY MR. DUCKETT, AND AS A RESULT, THE DIRECT APPEAL DID NOT COMPORT WITH THE SIXTH, EIGHTH AND FOURTEENTH AMENDMENTS.

Duckett's next claim again revisits the allegedly false testimony of hair analysis expert Michael Malone. According to Duckett, the prosecutor violated Duckett's constitutional rights on appeal when: (1) he failed to notify Duckett's appellate counsel of an April 1997 United States Department of Justice report which concluded that Malone gave false testimony during a 1985 hearing involving Alcee Hastings; and (2) he failed to inform Duckett's appellate counsel that Malone falsely testified at trial when he stated that he was not initially aware that a pubic hair had already been tested by the Florida Department of Law Enforcement at the time he performed his own examination. Duckett contends that the withholding of this information constitutes violations of Brady and Strickler. These arguments are simply a recast of Claim I.B. above, which the Court previously determined to be without merit. They are similarly deficient here.

In his state court proceedings, Duckett raised this particular challenge to Malone's testimony in his state petition for habeas corpus. The Florida Supreme Court, recognizing that this claim was virtually identical to Duckett's claims in his Rule 3.850 motions, summarily denied Duckett's habeas claim as duplicative. Duckett II, 918 So. 2d at 239.

The denial of this claim is not contrary to or an unreasonable application of federal law. As already discussed, there can be no violation of Brady or Strickler where there is no showing that the prosecutor "either willfully or inadvertently" suppressed the information. Strickler, 527 U.S. at 282. With respect to the 1997 Department of Justice report, it defies logic as to how the prosecutor could either willfully or inadvertently suppress the report when it did not exist until seven years **after** the Florida Supreme Court issued its order on direct appeal. Simply put, at the time of Duckett's appeal there was nothing to suppress. The Florida Supreme Court, when addressing Duckett's Rule 3.850 motions, and citing to Stickler, similarly held that the prosecutor did not willfully or inadvertently suppress the report due to its non-existence at the time. Duckett II, 918 So. 2d at 235. Duckett has not presented any legal authority to the contrary - nor could he.

Duckett's focus on Malone's allegedly false trial testimony concerning when he learned that the FDLE had previously tested one of the hair samples, also does not merit habeas relief. Duckett argues that this allegedly false testimony, if known at the time of trial or appeal, would have enabled Duckett to successfully challenge Malone's credibility. However, as the trial court and the Florida Supreme Court correctly held, Duckett's trial counsel

> extensively challenged Malone's credibility during the cross-examination of Malone and during the testimony of a Florida Department of Law Enforcement expert on hair analysis. It is not our responsibility to re-weigh that evidence. The expert's credibility was resolved by the jury.

Duckett I, 568 So. 2d at 895. The Court's own review of the record establishes that trial counsel did engage in lengthy cross-examination of Malone and attempted to attack his credibility on many levels. Moreover, it is undisputed that the trial court asked Duckett's counsel directly whether he had any objections to Malone's qualification as an expert witness and that Duckett's counsel answered in the negative. See Duckett I, 568 So. 2d at 895.

Duckett has not put forth any argument or legal authority to support his contention that whether or not Malone knew that the hair had been previously tested would have caused the jury to change its credibility determination of Malone and, in turn, change its verdict. Therefore, the prosecutor's alleged failure to notify Duckett's trial and/or appellate counsel of this alleged new evidence does not equate to a constitutional violation. See Strickler, 527 U.S. at 281-82 (to equate to a Brady violation, the evidence allegedly suppressed must be beneficial to the accused, suppressed willfully or intentionally, and prejudice must have ensued). Claim XIV is denied.

### CLAIM XV

> APPELLATE COUNSEL FAILED TO RAISE ON APPEAL NUMEROUS MERITORIOUS ISSUES WHICH WARRANT REVERSAL OF EITHER OR BOTH THE CONVICTIONS AND SENTENCE OF DEATH.

Duckett's penultimate claim alleges that his appellate counsel was constitutionally ineffective for failing to raise the following issues on direct appeal: (1) the allegedly improper prosecutorial argument and comments during trial; (2) the allegedly constitutionally defective jury instructions with respect to mitigating and aggravating factors; (3) the alleged lack of factual support for the aggravating factors of heinous, atrocious or cruel and that the murder occurred during the course of a sexual battery; (4) the allegedly improper jury instructions and comments by the trial court and prosecutor which minimized the jury's role in the sentencing process; (5) the instructions and arguments which allegedly shifted the burden of proof at sentencing from the prosecution to the defense; (6) the challenge to Florida's rule preventing counsel from interviewing jurors; (7) the two aggravating factors that are allegedly vague and improperly argued and applied; (8) Duckett's absence from allegedly "crucial" stages of trial; and (9) that the death penalty constitutes cruel and unusual punishment.

The Florida Supreme Court summarily dismissed the first five contentions of ineffective appellate counsel from Duckett's state habeas petition as "insufficiently pled." Duckett II, 918 So. 2d at 239.[61]  The Florida Court's disposition of this claim is not contrary to or an unreasonable application of federal law.  All nine alleged instances of ineffective

---

[61]Claims six through ten were not included in Duckett's state petition for habeas relief and do not appear to have been raised at any prior stage in the state court proceedings.  Accordingly, they are also due to be denied on the grounds that they were not exhausted in the state courts. 28 U.S.C. § 2254(b)(1); Kelly, 377 F.3d at 1343.

assistance have been addressed on their merits in this Order, and the Court has found each claim to be without merit.

Because there were no constitutional violations and because none of Duckett's underlying substantive claims have any merit, Duckett's appellate counsel cannot be found ineffective for failing to raise any of these issues on direct appeal. United States v. Nyhuis, 211 F.3d 1340, 1344 (11th Cir. 2000); Bertolotti, 883 F.2d at 1523; Alvord v. Wainwright, 725 F.2d 1282, 1291 (11th Cir. 1984). Claim XV is denied.

## CLAIM XVI

FLORIDA LAW DEPRIVED MR. DUCKETT OF HIS RIGHT TO HIS SIXTH AMENDMENT RIGHT TO HAVE ALL ELEMENTS OF HIS CRIME TO A FULL AND FAIR TRIAL BEFORE A JURY.

Duckett's sixteenth and final claim alleges that the jury's advisory opinion recommending the death sentence does not specify what, if any, aggravating circumstances the jurors found to have been proved during the penalty phase. As such, Duckett contends that the advisory opinion, and Florida's entire death penalty scheme, violates both Apprendi v. New Jersey, 530 U.S. 466 (2001), and Ring v. Arizona, 536 U.S. 584 (2002). The Florida Supreme Court denied this claim, which was raised in Duckett's state petition for habeas corpus, on the basis that Ring does not apply retroactively. Duckett II, 918 So. 2d at 239 (citing Johnson v. State, 904 So. 2d 400, 412 (Fla. 2005)).

The Court finds that the Florida Supreme Court's decision comports with clearly established law. As Duckett admits in his petition,[62] both the United States Supreme Court and the Eleventh Circuit Court of Appeals have held that Apprendi and Ring do not apply retroactively in habeas actions. See Schriro v. Summerlin, 542 U.S. 348, 358 (2004) Harris v. United States, 536 U.S. 545, 581 (2002); Turner v. Crosby, 339 F.3d 1247, 1285 (11th Cir. 2003); McCoy v. United States, 266 F.3d 1245, 1258 (11th Cir. 2001). In addition, the United States Supreme Court has repeatedly reviewed and upheld Florida's capital sentencing scheme, and Apprendi does not overrule that precedent. See Apprendi, 530 U.S. at 496-97.

To the extent Duckett is also arguing that the aggravating circumstances necessary to render a death sentence are tantamount to elements of the crime which should not be decided by a simple majority jury vote, this precise argument has been previously rejected by the United States Supreme Court. Hildwin v. Florida, 490 U.S. 638, 640-41 (1989). Because it is binding precedent that aggravating circumstances are not elements of the crime and therefore not part of the guilt phase of a capital trial, any such challenge that can be read into Duckett's sixteenth claim is without merit. Claim XVI is denied.

## Conclusion

Because the Court has found that none of Duckett's claims or his requests for discovery have any merit, his Petition for Writ of Habeas Corpus By a Person In State

---

[62](Doc. 1, p. 211, n. 99).

Custody - Capital Case (Doc. 1) is DENIED WITH PREJUDICE. The Clerk is directed to enter judgment accordingly, terminate any pending motions, and close the file.

IT IS SO ORDERED.

DONE and ORDERED at Ocala, Florida this 25th day of March, 2010.

UNITED STATES DISTRICT JUDGE

Copies to:   Counsel of Record